# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| KAI NIELSEN, | ) | DIVISION ONE |
| | ) | |
| Appellant, | ) | No. 68133-8-I |
| | ) | |
| v. | ) | |
| | ) | |
| WASHINGTON STATE | ) | PUBLISHED OPINION |
| DEPARTMENT OF LICENSING, | ) | |
| | ) | |
| Respondent. | ) | FILED: September 30, 2013 |
| | ) | |

DWYER, J. — Washington's implied consent law provides for the revocation of a licensee's driver's license where the licensee is arrested for driving while under the influence and refuses to submit to a blood or breath alcohol test. The law provides such licensees with procedural protections, including the right to appeal to the superior court from an administrative license revocation. Following license revocation, the licensee can apply for an ignition interlock driver's license (IIDL), which allows the licensee to lawfully operate a motor vehicle during the revocation. However, the IIDL statute precludes a licensee who obtains an IIDL from thereafter asserting the statutory right to judicial appeal from the administrative decision imposing the revocation.

Kai Nielsen obtained an IIDL following the administrative revocation of his driver's license pursuant to the implied consent law. He thereafter appealed from the Department of Licensing's revocation ruling, seeking review of the ruling in the superior court. The court dismissed Nielsen's appeal, determining that he had waived his right to judicial review by obtaining an IIDL. Nielsen challenges the superior court's decision, asserting that the appeal waiver provision is unconstitutional. We conclude that the challenged provision, which is not rationally related to a legitimate state interest, violates substantive due process protections. Accordingly, we determine that the appeal waiver provision of the IIDL statute is unconstitutional.

I

Washington's implied consent law was passed by popular initiative in 1968. Laws of 1969, ch. 1, § 1 (Initiative Measure No. 242, adopted Nov. 5, 1968); State v. Morales, 173 Wn.2d 560, 571-72, 269 P.3d 263 (2012). Codified at RCW 46.20.308, the law "provides law enforcement officers with an effective means of obtaining physical evidence of intoxication since any person operating a motor vehicle on the roads of this state is deemed to have consented to the administration of a blood alcohol test." State v. Bartels, 112 Wn.2d 882, 885, 774 P.2d 1183 (1989). "If the driver refuses to take the test, the driver's license, permit, or privilege to drive will be revoked or denied for at least one year." RCW 46.20.308(2)(a).

The people of Washington, in passing the implied consent initiative, provided procedural protections to licensees who are subject to administrative

license revocation pursuant to that law. See Laws of 1969, ch. 1, § 5.[1] The statute provides to such licensees an administrative hearing before a Department hearing officer to contest the license revocation. RCW 46.20.308(6)(b), .308(8). Moreover, where the license revocation is sustained by the Department hearing officer, the implied consent law grants to the licensee the right to access the courts in order to challenge the administrative revocation:

> If the suspension, revocation, or denial is sustained after such a hearing, the person whose license, privilege, or permit is suspended, revoked, or denied has the right to file a petition in the superior court of the county of arrest to review the final order of revocation by the department in the same manner as an appeal from a decision of a court of limited jurisdiction.

RCW 46.20.308(9). The license revocation may not be stayed during the pendency of the appeal unless the court determines that the licensee "is likely to prevail in the appeal" and that he or she "will suffer irreparable injury" without a stay.[2] RCW 46.20.308(9).

In 2008, our legislature enacted legislation providing for the issuance of an IIDL to licensees whose regular driver's licenses had been revoked pursuant to

---

[1] As enacted in 1969, the law provided:
If the revocation or determination that there should be a denial of issuance is sustained after [an administrative] hearing, the person whose license, privilege or permit is so affected shall have the right to file a petition in the superior court of the county wherein he resides, or, if a nonresident of this state, where the charge arose, to review the final order of revocation or denial by the department in the manner provided in RCW 46.20.334.
Laws of 1969, ch. 1, § 5.

[2] This exacting standard for obtaining a stay during the pendency of an appeal from an administrative revocation decision was not included in the initiative passed by the people of Washington in 1968. Rather, our legislature added this language by amendment of RCW 46.20.308 in 1995. See Laws of 1995, ch. 332, § 1.

the implied consent law. RCW 46.20.385(1)(a).[3] An IIDL is a permit issued by the Department "that allows the person to operate a noncommercial motor vehicle with an ignition interlock device while the person's regular driver's license is suspended, revoked, or denied." RCW 46.04.217. The licensee may apply for an IIDL at any time, including upon receiving notice of the revocation. RCW 46.20.385(1)(b). However, pursuant to RCW 46.20.385(1)(b), a person who receives an IIDL is thereafter not entitled to the procedural protections provided by the implied consent law: "A person receiving an ignition interlock driver's license waives his or her right to a hearing or appeal under RCW 46.20.308."

Legislative bill reports demonstrate the concern prompting our legislature to enact the IIDL statute. According to testimony before the legislature, a large number of people whose licenses had been revoked were nevertheless continuing to drive. H.B. REP. on Second Substitute H.B. 3254, 60th Leg., Reg. Sess. (Wash. 2008). The ignition interlock device was described as "[t]echnology [that] will prevent people from driving drunk," and, thus, issuance of an IIDL was intended to "hold [drunk drivers] accountable." H.B. REP. on Second Substitute H.B. 3254. Moreover, a legislative report noted that Department data showed a "'significant difference in the amount of recidivism'" between those drunk drivers who later had the ignition interlock device installed and those who did not. S.B.

---

[3] The law also provides for the issuance of IIDLs to persons convicted of driving under the influence, being in physical control of a motor vehicle while under the influence, vehicular homicide while under the influence, or vehicular assault while under the influence. RCW 46.20.385(1)(a).

REP. on Second Substitute H.B. 3254, 60th Leg., Reg. Sess. (Wash. 2008).[4] Thus, it appears logical to conclude that, in enacting the IIDL statute, our legislature intended to reduce the incidence of illegal drunk driving, thus protecting motorists in our state.

Pursuant to the implied consent law, Kai Nielsen's driver's license was revoked for one year following his arrest for driving under the influence and his subsequent refusal to submit to an alcohol breath test. Nielsen requested an administrative hearing to challenge the revocation. Following the hearing, which was conducted by telephone on May 12, 2011, the Department hearing officer sustained the revocation of Nielsen's driver's license. Nielsen thereafter applied for an ignition interlock driver's license pursuant to RCW 46.20.385. The IIDL application was granted.

Nielsen then filed a timely appeal in the Snohomish County Superior Court, seeking judicial review of the Department's revocation ruling. The Department filed a motion to dismiss the appeal, asserting that, pursuant to RCW 46.20.385(1)(b), Nielsen had waived his right to judicial appeal when he applied for and received the IIDL. Nielsen responded, contending that the waiver provision set forth in the IIDL statute—which precludes a person who has received an IIDL from asserting his or her right to seek judicial review of the administrative decision pursuant to the implied consent law—violates the

---

[4] According to the Department data quoted in the Senate Bill Report, "'[o]nly 18 percent of the drivers that installed an IID have a subsequent conviction for an alcohol related offense on their driving record, while over 80 percent of those drivers that did not get an interlock device installed have a second or subsequent offense on record.'" S.B. REP. on Second Substitute H.B. 3254.

constitutional rights to equal protection and due process of the law.

On November 30, 2011, the superior court dismissed Nielsen's appeal of the Department's revocation ruling.

Nielsen appeals.

II

The question before us is whether RCW 46.20.385(1)(b) violates the guarantees of the due process clauses of our state and federal constitutions. We conclude that denying to those licensees who obtain an IIDL the right to access the courts to challenge a Department revocation ruling bears no rational relation to a legitimate state interest. Accordingly, the provision contravenes constitutional substantive due process protections.

Both the Washington and the United States Constitutions mandate that no person may be deprived of life, liberty, or property without due process of law. U.S. CONST. amends. V, XIV, § 1; WASH. CONST. art. I, § 3. "The due process clause of the Fourteenth Amendment confers both procedural and substantive protections."[5] Amunrud v. Bd. of Appeals, 158 Wn.2d 208, 216, 143 P.3d 571 (2006) (citing Albright v. Oliver, 510 U.S. 266, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994)); see also United States v. Salerno, 481 U.S. 739, 746, 107 S. Ct. 2095,

---

[5] Our Supreme Court has repeatedly iterated that the state due process clause is coextensive with and does not provide greater protection than the federal due process clause. In re Pers. Restraint of Dyer, 143 Wn.2d 384, 394, 20 P.3d 907 (2001) ("Washington's due process clause does not afford a broader due process protection than the Fourteenth Amendment"); In re Pers. Restraint of Matteson, 142 Wn.2d 298, 310, 12 P.3d 585 (2000) (determining that "there are no material differences between the 'nearly identical' federal and state provisions," and, thus, that the state due process clause does not provide greater protection than the federal due process clause); State v. Manussier, 129 Wn.2d 652, 679, 921 P.2d 473 (1996) ("The [State v.] Gunwall[, 106 Wn.2d 54, 720 P.2d 808 (1986)] factors do not favor an independent inquiry under article I, section 3 of the state constitution.").

95 L. Ed. 2d 697 (1987); Daniels v. Williams, 474 U.S. 327, 331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986). "Substantive due process protects against arbitrary and capricious government action even when the decision to take action is pursuant to constitutionally adequate procedures." Amunrud, 158 Wn.2d at 218-19. It requires that "deprivations of life, liberty, or property be substantively reasonable"; in other words, such deprivations are constitutionally infirm if not "supported by some legitimate justification." Russell W. Galloway, Jr., *Basic Substantive Due Process Analysis*, 26 U.S.F. L.Rev. 625, 625-26 (1992).

The level of review applied in a due process challenge depends upon the nature of the interest involved. Amunrud, 158 Wn.2d at 219. Where the state interferes with a fundamental right, we apply strict scrutiny; such an infringement must be "narrowly tailored to serve a compelling state interest." Amunrud, 158 Wn.2d at 220. "When state action does not affect a fundamental right, the proper standard of review is rational basis." Amunrud, 158 Wn.2d at 222. Rational basis review requires that a challenged law be "rationally related to a legitimate state interest." Amunrud, 158 Wn.2d at 222. Applying this deferential standard, we "assume the existence of any necessary state of facts which [we] can reasonably conceive in determining whether a rational relationship exists between the challenged law and a legitimate state interest." Amunrud, 158 Wn.2d at 222. "As relaxed and tolerant as the rational basis standard is, however, the court's role is to assure that even under this deferential standard of review the challenged legislation is constitutional." DeYoung v. Providence Med. Ctr., 136 Wn.2d 136, 144, 960 P.2d 919 (1998) (determining that statute was

constitutionally infirm pursuant to the equal protection clause). Indeed, notwithstanding the strong presumption of constitutionality, the rational basis test "'is not a toothless one.'" Mathews v. DeCastro, 429 U.S. 181, 185, 97 S. Ct. 431, 50 L. Ed. 2d 389 (1976) (quoting Mathews v. Lucas, 427 U.S. 495, 510, 96 S. Ct. 2755, 49 L. Ed. 2d 651 (1976)).

Here, Nielsen contends that the IIDL statute's restriction on the right to appeal from a Department revocation ruling bears no rational relationship to a legitimate state purpose and, accordingly, violates substantive due process protections. He asserts that the restriction "acts as a deterrent against seeking review of the Department's decision to revoke a license." Br. of Appellant at 21. Indeed, obtaining an IIDL is effectively the only means to lawfully operate a motor vehicle during an administrative license revocation.[6] For this reason, any licensee who must drive in order to get to work or school—or to perform essential family obligations, such as taking children to school—is strongly discouraged from seeking judicial review of a Department revocation ruling. Thus, the provision challenged by Nielsen has the coercive effect of deterring licensees from asserting their right to judicial review of an administrative revocation decision pursuant to the implied consent law.

"'For due process protections to be implicated, there must be an individual

_____

[6] In order to obtain a stay during the pendency of an appeal from an administrative revocation decision, a licensee must demonstrate that he or she is "likely to prevail in the appeal" and would "suffer irreparable injury" were the request for a stay not granted. RCW 46.20.308(9). Accordingly, obtaining such a stay—and, thus, retaining the ability to lawfully operate a motor vehicle during an administrative license revocation—is not a substitute for obtaining an IIDL. Due to the exacting standard that must be met in order to obtain a stay, the coercive effect of the appeal waiver provision is not appreciably lessened by the theoretical possibility that a request for a stay might be granted.

interest asserted that is encompassed within the protection of life, liberty, or property.'" Attorney General's Office, Pub. Counsel Section v. Util. & Transp. Comm'n, 128 Wn. App. 818, 831, 116 P.3d 1064 (2005) (quoting Silver Firs Town Homes, Inc. v. Silver Lake Water Dist., 103 Wn. App. 411, 425-26, 12 P.3d 1022 (2000)). RCW 46.20.385(1)(b) denies to licensees who apply for and receive IIDLs the statutory right to access the courts to challenge a Department revocation ruling. Thus, the interest implicated is the statutory procedural protection provided by the implied consent law, RCW 46.20.308(9): the right to appeal from a Department revocation ruling and, thus, access the superior court for a determination of the propriety of the license revocation.

The United States Supreme Court has held that the right to use statutory adjudicatory procedures provided by state law constitutes a species of property protected by the due process clause. Logan v. Zimmerman Brush Co., 455 U.S. 422, 428-31, 102 S. Ct. 1148, 71 L. Ed. 2d 265 (1982). There, the Court determined that Logan had been deprived of a protected property interest when his claim under the Illinois Fair Employment Practices Act (FEPA) was terminated due to a state official's failure to comply with statutorily-mandated procedure. Logan, 455 U.S. at 424, 433. "The hallmark of property," the Court explained, "is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'" Logan, 455 U.S. at 430. Thus, the Court determined that an employee's statutory right to use FEPA's adjudicatory procedures in challenging his or her termination was protected by the due process clause. Logan, 455 U.S. at 430-31. Moreover, the Court analogized to

- 9 -

cases in which it had determined that the "right of access to courts" constitutes a due process right. Logan, 455 U.S. at 430 n.5; see also Ford Motor Co. v. Barrett, 115 Wn.2d 556, 569-70, 800 P.2d 367 (1990) (considering Ford Motor Company's assertion that a statute violated due process by restricting a statutorily-granted right to appeal).

The statutory right to access the courts on appeal from a Department revocation ruling has been available to licensees since the implied consent law was passed by the people of Washington in the 1968 general election. Laws of 1969, ch. 1, § 5. Thus, since the inception of Washington's implied consent law, the right to judicial appeal has been available as a safeguard against erroneous executive branch action, in the form of imposing administrative license revocations. Just as the right of an employee to use FEPA's adjudicatory procedures to challenge a purportedly unlawful termination constitutes "an individual entitlement grounded in state law," Logan, 455 U.S. at 430, so, too, does the right of Washington state licensees to access our state's courts to challenge an allegedly erroneous Department revocation ruling. Although due process does not guarantee a right to appeal, "'having made access to the courts an entitlement or a necessity, the State may not deprive someone of that access unless the balance of state and private interests favors the government scheme.'" Ford Motor Co., 115 Wn.2d at 569 (quoting Logan, 455 U.S. at 430 n.5). The statutory right of access to the courts provided by the implied consent law constitutes a property interest protected by the due process clause.

"Access to the courts is not recognized, of itself, as a fundamental right."

Ford Motor Co., 115 Wn.2d at 562. Thus, as Nielsen concedes, the proper standard of review here is rational basis.[7] See Amunrud, 158 Wn.2d at 222. Accordingly, to comply with substantive due process protections, the appeal wavier provision set forth in RCW 46.20.385(1)(b) must constitute a rational means of furthering a legitimate government purpose. Although the rational basis standard is highly deferential, our role is nevertheless to ensure that the challenged statute comports with due process protections. See DeYoung, 136 Wn.2d at 144.

The Department asserts that RCW 46.20.385(1)(b) furthers the legitimate government interests in (1) maintaining the deterrent effect that the implied consent statute has on drunk driving, (2) conserving state resources, and (3) obtaining finality of the administrative appeal process.[8] According to the

---

[7] The Department asserts that substantive rights can be created only by fundamental interests derived from the Constitution and that the protections of substantive due process are limited to such matters as marriage, family, and procreation. This is clearly incorrect. See Washington v. Glucksberg, 521 U.S. 702, 728, 117 S. Ct. 2258, 138 L. Ed. 2d 772 (1997) (holding that the asserted right to assisted suicide was not a fundamental right but, nevertheless, the Constitution required "that Washington's assisted-suicide ban be rationally related to legitimate government interests"); Medeiros v. Vincent, 431 F.3d 25, 32-33 (1st Cir. 2005) (applying rational basis review to both equal protection and substantive due process challenges where no fundamental right was implicated); Amunrud, 158 Wn.2d at 222 (applying rational basis review to substantive due process challenge where the court determined that the asserted right to pursue an occupation does not constitute a fundamental right). Thus, the Department's contention that Nielsen cannot assert a viable substantive due process claim because the right to appeal is not a fundamental interest is without merit.

[8] The Department references these interests in asserting that RCW 46.20.385(1)(b) does not violate equal protection principles; indeed, the Department sets forth very little argument regarding Nielsen's due process claim. "Equal protection is concerned with the differences in the way similarly-situated people are treated under a legislative scheme. Substantive due process is concerned with the fundamental fairness, and thus rational basis, for the effect of any specific law on an individual." State v. Marintorres, 93 Wn. App. 442, 451 n.1, 969 P.2d 501 (1999). Nevertheless, these asserted interests, were they determined to be rationally related to the challenged statutory provision, are of a type that could sustain that provision against either a due process or equal protection challenge. Accordingly, we consider these asserted government interests in the context of our due process analysis.

Department, these interests, considered together, demonstrate that the appeal waiver provision of the IIDL statute is rationally related to a legitimate state purpose. We disagree.

The Department first contends that RCW 46.20.385(1)(b) furthers the government interest in "maintaining the deterrent effect the implied consent statute has on drunk driving." Br. of Resp't at 19. The Department contends that

> if the statutory scheme were to allow a driver to completely evade the consequences of driving under the influence by obtaining an IIDL and the ability to continue driving while also being allowed to proceed with a challenge to the suspension, it would undermine the deterrent effect of the suspension.

Br. of Resp't at 24. According to the Department, RCW 46.20.385(1)(b) evinces a legislative intent to preclude licensees from "hav[ing] their cake and eat[ing] it too." Br. of Resp't at 29. However, a licensee does not evade the consequences imposed by the implied consent law simply because he or she has the right to challenge an administrative license revocation in the superior court. Indeed, the procedural protections provided by the implied consent law, including the right to judicial review of an administrative revocation ruling, are the means of determining whether such consequences were properly imposed.

Moreover, Department data considered by the legislature in enacting the IIDL statute demonstrates that installation of the ignition interlock device greatly reduces drunk driving recidivism rates. S.B. Rep. on Second Substitute H.B. 3254. This suggests that providing IIDLs to *all licensees* whose licenses have been revoked pursuant to the implied consent law provides the greatest deterrent effect. Thus, the appeal waiver provision, to the extent that it discourages

- 12 -

licensees from obtaining an IIDL in order to preserve their right to judicial appeal, actually decreases the deterrent effect of our state's drunk driving legislation. The purpose of the IIDL statute is to reduce the incidence of illegal driving, including drunk driving, during license revocation, thus protecting Washington motorists. By precluding licensees who wish to appeal from a revocation decision from obtaining an IIDL, RCW 46.20.385(1)(b) subverts the purpose of the IIDL statute itself.

The Department additionally asserts that the conservation of state resources constitutes a legitimate government interest justifying the appeal waiver provision. The challenged statutory provision, however, must be a rational means of achieving a legitimate government interest. As explained below, administrative resources for implementing the IIDL program are conserved only by denying IIDLs—and, thus, the ability to lawfully operate a motor vehicle during a period of license revocation—to those persons whose licenses were wrongfully revoked by the Department. Procuring administrative savings in such a manner does not constitute a rational means of furthering the asserted government interest.

The IIDL statutory scheme denies only to those licensees who have already obtained an IIDL the right to judicial review provided by the implied consent law. A licensee whose license has been administratively revoked can apply for an IIDL "anytime." RCW 46.20.385(1)(b). Thus, the licensee can obtain an administrative hearing to challenge the revocation, then appeal to the superior court from an adverse final administrative ruling, and thereafter apply for

and receive an IIDL in those circumstances in which the superior court affirms the administrative ruling. Only those licensees who apply for and receive an IIDL prior to asserting their procedural rights pursuant to the implied consent law are, as a result, denied those rights. RCW 46.20.385(1)(b) ("A person receiving an ignition interlock driver's license waives his or her right to a hearing or appeal under RCW 46.20.308."). Thus, where a license is properly revoked by the Department—in other words, where the revocation is, or would be, upheld in the superior court—no administrative resources required to process an IIDL application are saved. Such licensees can always receive an IIDL—either prior to appealing from the Department's final ruling or after the Department prevails in the superior court.

Instead, administrative savings are procured only with regard to those licensees whose licenses are wrongfully revoked by the Department—in other words, those licensees who prevail, or would prevail, on judicial appeal. Such licensees would obtain an IIDL only prior to appeal from the Department's revocation ruling, as they would have no need for an IIDL after prevailing on appeal. Thus, administrative resources necessary to process an IIDL application are conserved only by precluding those persons who would prevail on appeal from obtaining an IIDL prior to successfully appealing from the administrative revocation decision.[9] Accordingly, administrative savings are accrued only by

---

[9] More accurately, such administrative resources are conserved only by denying IIDLs to those persons who would not clearly qualify for a stay of the revocation during the pendency of the appeal but who would nevertheless prevail on judicial review. However, even where a superior court judge determines that a licensee is likely to prevail on appeal, a stay cannot be

refusing to allow mitigation of the damage done to those persons whose licenses were wrongfully revoked by the Department. This turns the statutory scheme on its head. Because procuring administrative savings in such a manner is not a *rational* means by which to further the government's interest in conserving state resources, that interest cannot justify the challenged statutory provision.[10]

Finally, the Department asserts that there is a legitimate state interest in administrative finality, and that denying access to the courts furthers this interest. Since the inception of statehood, however, our constitution has provided for a restrictive review of agency decisions by writ of certiorari. WASH. CONST. art. IV, § 6. While resort to this procedure would likely be of little aid to people such as Nielsen—because of the writ's severely restrictive scope—the existence in the constitution of this provision indicates that our state's founders did not consider administrative finality to be an interest worth ensuring. To the contrary, by inserting this provision into the constitution, the founders expressed a suspicion of executive branch decision-making left unchecked by judicial review. The Department's claim that administrative finality is a legitimate state interest justifying the challenged statutory provision is unavailing.

---

granted unless the licensee also demonstrates that, without a stay, he or she will "suffer irreparable injury." RCW 46.20.308(9). This standard, enacted by our legislature in 1995, is clearly intended to preclude most licensees from obtaining a stay of revocation during the pendency of an appeal, thus preventing licensees from retaining the ability to lawfully operate a motor vehicle (without an IIDL) while challenging a license revocation.

[10] Moreover, because a licensee must pay a considerable fee in order to apply for an IIDL, the extent of the administrative cost of processing an IIDL application is unclear. See RCW 46.20.380 (providing that no person may file an application for an IIDL without first paying to the Department "a fee of one hundred dollars"). Thus, administrative resources are conserved only by denying IIDLs to a small group of licensees (those who would prevail on appeal) and only to the extent that application processing costs exceed the amount of the application fee charged.

- 15 -

Denying to licensees who obtain IIDLs the right to access the courts in order to challenge a Department revocation ruling does not further the state's interest in maintaining the deterrent effect of its drunk driving laws. Indeed, by discouraging licensees from obtaining IIDLs, it directly conflicts with that interest. Moreover, conserving administrative resources by refusing to mitigate the damage done to those persons whose licenses were wrongfully revoked is not a rational means of furthering that government interest. Finally, the asserted merit of administrative finality does not constitute a sufficient government interest to justify denial of the statutorily-granted right to access the courts. Because there is no rational basis for the challenged legislative provision, we hold that it violates substantive due process protections.[11]

Reversed.

Dwyer, J.

We concur:

Appelwick, J.

_____

---

[11] Because we determine that the appeal waiver provision of the IIDL statute is unconstitutional in violation of the due process clause, we do not address Nielsen's contention that the provision violates equal protection guarantees.

Kai Nielsen v. Washington State Department of Licensing, No. 68133-8-I

VERELLEN, J. (dissenting) — I respectfully dissent. The legislature has decided that drivers challenging the revocation of their license under Washington's implied consent statute may obtain a specialty ignition interlock driver's license (Interlock License) after the drivers either abandon or conclude their challenge to the revocation. It is a matter of legislative grace whether to allow interim relief during an appeal of a license revocation. It is not irrational to require a licensee whose license has been revoked to first pursue his statutory appeal to conclusion before becoming eligible for a specialty license. Even though policy arguments may favor broader access to the specialty license, it is the province of the legislature to choose how and when a licensee may seek the specialty driver's license. Kai Nielsen does not establish that delaying access to the specialty license violates equal protection or substantive due process.

*Substantive Due Process*

Substantive due process generally asks whether the government abused its power by arbitrarily depriving a person of a constitutionally protected interest in life, liberty or property.[1] As Nielsen concedes, no fundamental right is at issue,[2] and the proper standard here is rational basis review. Rational basis review requires that a

---

[1] Nieshe v. Concrete Sch. Dist., 129 Wn. App. 632, 640-41, 127 P.3d 713 (2005) (emphasis omitted).

[2] Nielsen alleges he is deprived of access to the courts, but access to the courts is not, in itself, a fundamental right. Ford Motor Co., 115 Wn.2d at 562, 569. However, if the legislature creates an entitlement to access to the courts, "the State may not deprive someone of that access unless the balance of state and private interests favors the government scheme." Id. at 569; see also Logan v. Zimmerman Brush Co., 455 U.S. 422, 428-31, 102 S. Ct. 1148, 71 L. Ed. 2d 265 (1982).

challenged law be "rationally related to a legitimate state interest."[3] In applying the substantive due process test, we give deference to legislative policy decisions.[4] In doing so, we "assume the existence of any necessary state of facts which [we] can reasonably conceive in determining whether a rational relationship exists between the challenged law and a legitimate state interest."[5] The regulation may only be struck down if there is no rational connection between the challenged statute and a legitimate government objective.[6] Indeed, the deferential rational basis standard may be satisfied even where the "'legislative choice . . . [is] based on rational speculation unsupported by evidence or empirical data.'"[7]

Nielsen asserts there is no legitimate state interest in preventing licensees who obtain Interlock Licenses from appealing the underlying revocation, and further asserts that a rational relationship does not exist between the appeal waiver provision and any state interest. Nielsen's substantive due process theory relies on an inaccurate reading of the appeal waiver provision. The statutory scheme does not deprive licensees of the right to appeal the Department's action. The licensee may both appeal and receive an Interlock License; the law simply requires a licensee to pursue the appeal to completion before receiving the Interlock License. Because there is no deprivation of the right to access the courts, I would conclude Nielsen's substantive due process claim fails.

---

[3] Amunrud v. Bd. of Appeals, 158 Wn.2d 208, 222, 143 P.3d 571 (2006).

[4] Jones v. King County, 74 Wn. App. 467, 479, 874 P.2d 853 (1994).

[5] Amunrud, 158 Wn.2d at 222.

[6] Id.

[7] DeYoung v. Providence Med. Ctr., 136 Wn.2d 136, 148, 960 P.2d 919 (1998) (alterations in original) (quoting F.C.C. v. Beach Commc'ns, Inc., 508 U.S. 307, 315, 113 S. Ct. 2096, 124 L. Ed. 2d 211 (1993)).

Further, even assuming an actionable deprivation, it is rational to require that a party conclude the statutory appeal process before obtaining special relief from the revocation. The Department argues that substantive due process is not denied because "the legislature reasonably determined not to provide drivers the continued privilege to drive with an [Interlock License] despite the suspended or revoked status of their driver's license and simultaneously still be able to continue to challenge the suspension for revocation."[8] In any number of settings, the legislature has provided for administrative hearings that may culminate in an appeal to the courts. Inherent in designing such a process is the legislature's authority to determine if any interim relief should be available during the pendency of the appeal.[9]

The majority notes that widely allowing Interlock Licenses without regard to the appeal process *better* fulfills the goal of avoiding unlawful driving. However, rational basis review only requires *some* rational relationship between the means and the ends, not the best and most effective relationship.[10] Whether or not the legislature considered that a licensee might choose to forego an appeal to immediately obtain an Interlock License, the legislature has a legitimate interest in defining when, if, and how any interim relief should be available to an appellant during the appeal process. The

---

[8] Respondent's Br. at 29.

[9] The legislature has often defined the scope of any interim relief in the context of administrative appeals. For example, RCW 34.05.550 authorizes courts to grant a stay in an administrative appeal and other temporary remedies to applicants potentially harmed by agency action. See Gen. Tel. Co. of the Nw., Inc. v. Wash. Utils. & Transp. Comm'n, 104 Wn.2d 460, 706 P.2d 625 (1985) (discussing RCW 80.04.180, which provides telephone companies interim relief in the form of a supersedeas order allowing higher rates because the utility made a showing of irreparable damage).

[10] Manussier, 129 Wn.2d at 673; Coria, 120 Wn.2d at 173.

legislature may rationally prefer that the statutory appeal be exhausted without the availability of interim relief before a specialty license becomes available.

By analogy, there are good policy reasons supporting stays during an appeal for those who can demonstrate irreparable harm,[11] but it would not deny *substantive* due process if the legislature designed an appeal process that does not provide for any stays. Procedural due process requirements of notice and hearing may implicate the availability of a stay, but even in this setting it is recognized that

> the stay of suspension while a driver appeals his case to superior court [is] a matter of legislative grace and well beyond the due process requirements of the state and federal constitutions. The due process clause does not require the State to afford an indefinite stay of license suspension to a driver with an extensive record of violations while he exhausts all possible appeals.[12]

Nielsen essentially argues the legislature must choose either to allow Interlock Licenses for everyone at every stage of the appeal, or for no one at all. Nielsen provides no authority that the legislature is compelled to grant interim relief to all appellants throughout the appeal process. To the extent that Nielsen suggests that the waiver provision has the practical impact of forcing revoked drivers to choose between the Interlock License and an appeal to superior court, with the resulting risk that such

---

[11] RCW 46.20.308(9).

[12] Mentor v. Nelson, 31 Wn. App. 615, 619-20, 644 P.2d 685 (1982) (citations omitted); see also Dep't of Licensing v. Ramirez, 34 Wn. App. 430, 435, 661 P.2d 1009 (1983) ("The stay [of revocation] is purely a matter of legislative grace which goes beyond the due process requirements of the state and federal constitutions. We hold a driver's interest is adequately protected if he is allowed to make application for a stay and have the Department consider his request; this can be accomplished without a formal hearing.").

4

drivers may choose to drive unlawfully, he raises policy questions for the legislature to consider.[13]

*Equal Protection*

Under the Washington and federal constitutions, persons similarly situated with respect to the legitimate purposes of the law are guaranteed equal treatment.[14] "Where neither a suspect classification nor a fundamental right is at issue, a rational basis test is the appropriate one for determining whether a violation of equal protection of the law has occurred."[15] Rational basis review of an alleged equal protection violation requires us to uphold a legislative classification unless it rests on grounds wholly irrelevant to the achievement of legitimate state objectives.[16] The person challenging the law must establish that the classification is purely arbitrary.[17, 18]

---

[13] In fact, a new law provides that "[w]hen any person charged with or arrested for a violation of RCW 46.61.502, 46.61.504, or 46.61.522, in which the person has a prior offense as defined in RCW 46.61.5055 and the current offense involves alcohol," an interlock device must be installed as a condition of release from "custody before arraignment or trial on bail or personal recognizance." LAWS OF 2013, 2d Spec. Sess., ch. 35, § 1.

[14] WASH. CONST. art. I, § 12; U.S. CONST. amend. XIV; State v. Manussier, 129 Wn.2d 652, 672, 921 P.2d 473 (1996).

[15] Ford Motor Co. v. Barrett, 115 Wn.2d 556, 562, 800 P.2d 367 (1990).

[16] State v. Coria, 120 Wn.2d 156, 169, 839 P.2d 890 (1992).

[17] Manussier, 129 Wn.2d at 673.

[18] Under rational basis review, we begin with a presumption in favor of the constitutionality of a statute or statutory scheme. Paulson v. Pierce County, 99 Wn.2d 645, 653, 664 P.2d 1202 (1983); Merseal v. Dep't of Licensing, 99 Wn. App. 414, 420, 994 P.2d 262 (2000). To overcome this presumption, the challenger must show that the classification applies unequally to those within a class, that no real basis exists for distinguishing between classes, or that the classification bears no rational relation to the statute's purpose. Yakima County Deputy Sheriff's Ass'n v. Bd. of Comm'rs, 92 Wn.2d 831, 835-36, 601 P.2d 936 (1979).

Nielsen asserts that RCW 46.20.385(1)(b) creates an impermissible classification because it treats those licensees who seek review of the license revocation differently than those licensees who receive an Interlock License and do not seek review of the revocation. He specifically contends that those licensees who do not receive an Interlock License retain their statutory right to appeal the revocation, whereas those who receive an Interlock License relinquish the statutory right to appeal.

I find Nielsen's argument unpersuasive. Equal protection addresses differential treatment of groups or classes of people who are similarly situated. The legislature, in offering the Interlock License to those who have had their licenses suspended, revoked or denied, treats all licensees on an equal basis, with no possibility of differential treatment. The legislative framework simply provides two different pathways by which to obtain an Interlock License. A licensee may immediately apply for and obtain an Interlock License without appealing the suspension, revocation, or denial. Alternatively, a licensee may also obtain an Interlock License after pursuing the administrative hearing and appeal in superior court.[19] Nothing in RCW 46.20.385 prevents such an approach. RCW 46.20.385(1)(b) specifically provides that "[a] person may apply for an ignition interlock driver's license anytime."

As our Supreme Court has recognized, "[p]aramount to the equal protection clause is the idea that all individuals within one group must be treated equally. If this is true, the equal protection is satisfied and the analysis may end."[20] Because a licensee

---

[19] Of course, there is no need for the specialty license if the appeal is successful.

[20] Guardianship Estate of Keffeler ex rel. Pierce v. State, 151 Wn.2d 331, 340, 88 P.3d 949 (2004).

may both pursue an appeal and receive an Interlock License, I would conclude Nielsen fails to make the threshold showing of differential treatment.

I would affirm the superior court.