# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 47614-2-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| LEO BRITTON BUNKER, III, | |
| Appellant. | |

MAXA, A.C.J. – Leo Bunker appeals the sentencing court's imposition of a mandatory $100 DNA (deoxyribonucleic acid) fee under RCW 43.43.7541. We hold that RCW 43.43.7541 does not violate substantive due process when applied to defendants who do not have the current or likely future ability to pay the DNA fee and does not violate equal protection when applied to repeat felony offenders who have to pay the DNA fee again even though that offender's DNA already has been collected. Accordingly, we affirm the sentencing court's imposition of the DNA fee.

## FACTS

A jury found Bunker guilty of two counts of second degree rape, one count of harassment-threat to kill, and one count of violation of a protection order. On appeal, this court remanded for resentencing. The State recognized that given Bunker's ongoing medical conditions, his present ability to pay legal financial obligations (LFOs) was doubtful. Bunker's defense counsel stated that Bunker had little, if any, ability to pay any LFOs.

The sentencing court did not impose any discretionary LFOs, but ordered Bunker to pay mandatory LFOs, including a $100 DNA fee. Bunker appeals the imposition of the DNA fee.

ANALYSIS

Bunker argues that the imposition of the DNA fee under RCW 43.43.7541 violates substantive due process and equal protection. We reject Bunker's substantive due process challenge because RCW 43.43.7541 is rationally related to the legislature's interest in funding a DNA database. We reject Bunker's equal protection claim because he fails to demonstrate that repeat felony offenders are treated differently than first time felony offenders or that RCW 43.43.7541 intentionally discriminates against him, and because imposing the DNA fee is rationally related to the State's interest in funding a DNA database.

A.    STANDARD OF REVIEW

We review constitutional challenges de novo. *State v. Schmeling*, 191 Wn. App. 795, 798, 365 P.3d 202 (2015). A statute is presumed constitutional, and the party challenging it has the heavy burden of convincing the court that there is no reasonable doubt that the statute is unconstitutional. *Id.*

B.    MANDATORY DNA FEE

RCW 43.43.754(1)(a) requires that a biological sample be collected for DNA analysis from every adult or juvenile convicted of a felony or a series of other crimes. To pay for the DNA collection, RCW 43.43.7541 requires the imposition of a $100 fee.

> Every sentence imposed for a crime specified in RCW 43.43.754 must include a fee of one hundred dollars. The fee is a court-ordered legal financial obligation as defined in RCW 9.94A.030 and other applicable law. . . . The clerk of the court shall transmit eighty percent of the fee collected to the state treasurer for deposit in the state DNA database account created under RCW 43.43.7532, and shall

> transmit twenty percent of the fee collected to the agency responsible for collection of a biological sample from the offender as required under RCW 43.43.754.

Former RCW 43.43.7541 (2011).

RCW 43.43.7541 expressly states that every felony sentence "must" include a $100 DNA fee as a court-ordered LFO. Therefore, the DNA collection fee is a mandatory LFO. *State v. Kuster*, 175 Wn. App. 420, 424, 306 P.3d 1022 (2013). For DNA fees and other mandatory LFOs, "the legislature has directed expressly that a defendant's ability to pay should not be taken into account." *State v. Lundy*, 176 Wn. App. 96, 102, 308 P.3d 755 (2013).

C.      SUBSTANTIVE DUE PROCESS CHALLENGE

Bunker argues that RCW 43.43.7541 violates substantive due process when a DNA fee is imposed on a defendant who does not have the present or future ability to pay the fee. We disagree.

1.      Legal Principles

The Fifth and Fourteenth Amendments to the United States Constitution and article I, section 3 of the Washington Constitution mandate that no person may be deprived of life, liberty, or property without due process of law. "Substantive due process protects against arbitrary and capricious government action." *Amunrud v. Bd. of Appeals*, 158 Wn.2d 208, 218-19, 143 P.3d 571 (2006). An action violates substantive due process if a deprivation of life, liberty or property is substantively unreasonable or is not supported by legitimate justification. *Nielsen v. Dep't of Licensing*, 177 Wn. App. 45, 53, 309 P.3d 1221 (2013).

The level of review we apply to a due process challenge depends on the nature of the right involved. *Amunrud*, 158 Wn.2d at 219. We apply a strict scrutiny standard when state

action interferes with a fundamental right. *Id.* at 220. But we apply a rational basis standard when a fundamental right is not affected. *Id.* at 222.

Here, RCW 43.43.7541 mandates the payment of a fee. Bunker concedes that payment of a fee does not involve a fundamental right. *See In re Pers. Restraint of Metcalf*, 92 Wn. App. 165, 176-77, 963 P.2d 911 (1998) (applying rational basis review to a prisoner's interest in money). Therefore, we apply rational basis review.

Under rational basis review, we determine whether a rational relationship exists between the challenged law and a legitimate state interest. *Amunrud*, 158 Wn.2d at 222. In making this determination, "a court may assume the existence of any necessary state of facts which it can reasonably conceive." *Id.*

The rational basis standard is highly deferential to the challenged action. *Nielsen*, 177 Wn. App. at 56. "The rational basis test is the most relaxed form of judicial scrutiny." *Amunrud*, 158 Wn.2d at 223.

2.    Application of *Curry* and *Lundy*

In *State v. Curry*, the Supreme Court examined the constitutionality of the mandatory victim penalty assessment under RCW 7.68.035(1). 118 Wn.2d 911, 917, 829 P.2d 166 (1992). The court did not identify the constitutional basis of the challenge, but stated that the defendants argued that "the statute could operate to imprison them unconstitutionally in the future if they are unable to pay the penalty." *Id.* The court determined that no defendant would be incarcerated for the inability to pay the assessment unless nonpayment was willful. *Id.* at 918. Therefore, the court held that "the victim penalty assessment is neither unconstitutional on its face nor as applied to indigent defendants." *Id.*

4

This court in *Lundy* cited to *Curry* in discussing the imposition of mandatory LFOs, including the DNA fee. 176 Wn. App. at 102-03. This court stated, "[O]ur courts have held that these mandatory obligations are constitutional so long as 'there are sufficient safeguards in the current sentencing scheme to prevent *imprisonment* of indigent defendants.' " *Id.* (quoting *Curry*, 118 Wn.2d at 918). Relying on *Curry* and *Lundy*, this court recently rejected a defendant's claim that the DNA fee violated his substantive due process rights. *State v. Mathers*, No. 47523-5, 2016 WL 2865576, *7 (Wash. Ct. App. May 10, 2016).

These cases suggest that imposition of the DNA fee is not a manifest error based on substantive due process. But in none of these cases is there any indication that the defendant made the argument Bunker asserts – that imposing a mandatory fee on offenders who are unable to pay the fee does not rationally serve the legislature's interest in funding a DNA database. Therefore, we must conduct a rational basis analysis of the DNA fee in light of this argument.

3.  Rational Basis Analysis

In RCW 43.43.753, the legislature expressly found that "DNA databases are important tools in criminal investigations, in the exclusion of individuals who are the subject of investigations or prosecutions, and in detecting recidivist acts." The legislature concluded that "it is in the best interest of the state to establish a DNA database and DNA data bank containing DNA samples submitted by persons convicted of felony offenses and other crimes" designated by statute. RCW 43.43.753. Eighty percent of the DNA fee mandated by RCW 43.43.7541 must be deposited into an account to be used only for the creation, operation, and maintenance of a DNA database under RCW 43.43.7532. Under this statutory scheme, the clear purpose of the mandatory DNA fee is to help fund the creation, operation, and maintenance of a DNA database.

No. 47614-2-II

*See State v. Thornton*, 188 Wn. App. 371, 375, 353 P.3d 642 (2015); *State v. Brewster*, 152 Wn. App. 856, 860, 218 P.3d 249 (2009).

Bunker acknowledges that funding the DNA database is a legitimate state interest. However, he argues that imposing a mandatory fee on offenders who are unable to pay the fee does not rationally serve that interest.[1]

We find that RCW 43.43.7541 is rationally related to the legislature's legitimate interest in funding a DNA database on two levels. First, imposing DNA fees on all felony offenders without assessing their ability to pay is rationally related to funding a DNA database because although some offenders may be unable to pay the DNA fee, some offenders will be able to pay it. So the imposition of DNA fees on all offenders creates a funding source for the DNA database.

Second, imposing DNA fees on offenders like Bunker who are indigent at the time of sentencing is rationally related to funding a DNA database because that indigency may not always exist. We can conceive of a situation in which an offender who is indigent at sentencing will be able to pay the DNA fee at some future time. So it is not unreasonable to believe that imposing DNA fees on indigent offenders would result in some funding for the DNA database.

We hold that imposition of the mandatory DNA fee under RCW 43.43.7541 does not violate substantive due process.

---

[1] Bunker highlights that because under RCW 43.43.7541 the DNA fee is paid only after all other LFOs have been satisfied, that fee would be the least likely LFO to be paid by an indigent offender.

D.     EQUAL PROTECTION CHALLENGE

Bunker argues that RCW 43.43.7541 violates equal protection because repeat felony offenders have to pay the DNA fee again even though that offender's DNA already has been collected.  We disagree.

1.    Legal Principles

The Fourteenth Amendment to the United States Constitution and article I, section 12 of the Washington Constitution guarantee equal protection under the law.  "Equal protection requires that similarly situated individuals receive similar treatment under the law."  *Harris v. Charles*, 171 Wn.2d 455, 462, 256 P.3d 328 (2011).

The threshold requirement of an equal protection challenge is that a defendant "must establish that he received disparate treatment because of membership in a class of similarly situated individuals and that the disparate treatment was the result of intentional or purposeful discrimination."  *State v. Osman*, 157 Wn.2d 474, 484, 139 P.3d 334 (2006).

As with substantive due process, the appropriate level of review in equal protection claims depends on the nature of the classification or the rights involved.  *State v. Hirschfelder*, 170 Wn.2d 536, 550, 242 P.3d 876 (2010).  We apply a strict scrutiny standard when state action involves suspect classifications like race, alienage, or national origin, as well as when the state action burdens fundamental rights.  *Id.*  Intermediate scrutiny applies for semi-suspect classifications and important rights.  *Id.*  Otherwise, we apply rational basis review.  *Id.*

Here, Bunker concedes that he is not a member of a suspect or semi-suspect class and that the payment of a fee does not involve a fundamental or important right.  Therefore, we apply rational basis review.

Rational basis review is a highly deferential standard, and this court will uphold a statute under this standard unless its provisions are wholly irrelevant to the achievement of legitimate state objectives. *In re Det. of Stout*, 159 Wn.2d 357, 375, 150 P.3d 86 (2007). Rational basis requires only that the statute's means be rationally related to a legitimate state goal, and not that the means be the best way of achieving that goal. *State v. Manussier*, 129 Wn.2d 652, 673, 921 P.2d 473 (1996).

    2.    No Unequal Treatment

Bunker argues that within the group of all felony offenders, the class of felony offenders who have been convicted more than once are treated differently than first time offenders because repeat offenders have to pay the DNA fee even though their DNA already has been collected. We reject this argument for three reasons.

First, RCW 43.43.7541 does not treat repeat offenders differently than first time offenders. Under RCW 43.43.7541, *every* felony sentence must include the DNA fee. This means that under this statute all felony offenders are treated the same. A claimant must be treated *differently* from others who were similarly situated to prevail on an equal protection challenge. *Osman*, 157 Wn.2d at 485. Bunker actually is seeking *unequal* treatment, not equal treatment. He claims that repeat offenders should be treated differently and relieved from payment of the DNA fee because they do not need to have their DNA collected more than once. This type of policy argument can only be resolved by the legislature, rather than this court.

Second, even if RCW 43.43.7541 has a disparate impact on repeat offenders, Bunker still must provide evidence of intentional or purposeful discrimination. *Id*. at 484; *see also State v. Johnson*, No. 32834-1, 2016 WL 3124893, \*2 (Wash. Ct. App. June 2, 2016). He has not done so here.

Third, the imposition of the DNA fee does not violate equal protection under rational basis review. Bunker assumes that the only purpose of the DNA fee is to fund the collection and analysis of a particular defendant's DNA. But RCW 43.43.7541 is not so limited. RCW 43.43.7532 provides that DNA fees are used for the operation and maintenance of a DNA database, not simply to collect DNA from particular defendants. The collection of DNA fees from all defendants – even repeat offenders who already have provided their DNA – is rationally related to the legislature's interest in funding the operation and maintenance of the DNA database.

We hold that imposition of the mandatory DNA fee under RCW 43.43.7541 does not violate equal protection.

## CONCLUSION

We affirm the sentencing court's imposition of the mandatory DNA fee under RCW 43.43.7541.

No. 47614-2-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, A.C.J.

We concur:

_____
WORSWICK, J.

_____
LEE, J.