IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34887-3-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WILLICE ALBERT PENDELL, III, | ) | UNPUBLISHED OPINION |
| also known as WILLIS ALBERT | ) | |
| PENDELL, III, | ) | |
| | | |

Appellant.

FEARING, C.J. — Willice Pendell, III challenges for the first time on appeal the constitutionality of assessed mandatory legal financial obligations on the basis of his indigency. He argues that, because of his poverty, the imposition of the statutory $500 victim penalty assessment, $200 criminal filing fee, and $100 deoxyribonucleic acid (DNA) collection fee breaches his substantive due process rights. Because of the amount of mandatory legal financial obligations and evidence of impecuniosity, we address the merits of Pendell's appeal, but, based on precedent, reject his assignment of error.

FACTS

This appeal arises from the prosecution of Willice Pendell III for assaulting a paramedic on December 23, 2015. On that wintry day, Pendell was a forty-eight-year-old homeless man who could not work due to various medical conditions, including a chest hiatal hernia and an injured ankle. When he earlier worked, Pendell performed manual labor jobs such as painting, welding, and landscaping.

On December 23, 2015, Willice Pendell's penury led him to camp under a bridge near a church located at Second Avenue and Cedar Street, in Spokane. Pendell awoke early that cold morning and drank vodka and Kahlua until a needy couple approached him. The couple sought winter coats, so an inebriated Pendell escorted them to the church where they could obtain the outerwear. Pendell then fell asleep on the front stoop of the church.

As a result of Willice Pendell's unconscious state, law enforcement summoned an ambulance to the downtown church. American Medical Response paramedics Paul Phelps and Randall Bean responded and aroused Pendell. Pendell cooperated with instructions from the paramedics, but required assistance to stand. The paramedics, unable to leave an intoxicated person on the street, ferried Pendell to the Sacred Heart Hospital emergency room. Pendell grew agitated when medical staff attempted to restrain him as he lay on a stretcher waiting to be assigned a room. He extracted his hands from restraints and punched Bean in the face.

2

## PROCEDURE

The State of Washington charged Willice Pendell, III with third degree assault, for which a jury found him guilty. During trial, Pendell testified to his periodic homelessness for the last five to ten years. During the sentencing hearing, Pendell further explained that he had lived in a mental health facility in Spokane Valley shortly before his arrest, but the facility expelled him for abusing alcohol. At the time of the hearing, Pendell could not work because of health issues including a recovering ankle injury.

The trial court sentenced Willice Pendell to thirty-three months' confinement and twelve months' community custody with credit given for three hundred and ten days already served in jail. The sentencing court ordered Pendell to pay mandatory legal financial obligations (LFOs): the $500 victim penalty assessment, the $200 criminal filing fee, and the $100 DNA collection fee.

During sentencing, the trial court, on its own, raised a question regarding its ability to waive these mandatory fees:

> [THE COURT:] It's interesting. I don't know that he can pay the LFOs. There's a new case out that talks about, without being incumbent on the court, to not impose the $800 if the person can't pay and they are indigent. And I just don't have it at the tip of my tongue. But at this point, I'm ordering them, but I'm pointing it out to counsel in the event that there is a way to manage that. I just don't know how he's going to pay the LFOs. But absent some briefing and description for the Court's ability to not impose the LFOs, I'm doing so.

Report of Proceedings at 241. Trial counsel supplied no briefing on the question, and the

3

sentencing court later ordered Pendell to pay the financial obligations at a rate of $5 per month commencing in January 2018. The trial court found Pendell indigent for purposes of appointing an attorney on appeal.

## LAW AND ANALYSIS

On appeal, Willice Pendell only assigns error to the sentencing court's imposition of mandatory legal financial obligations. He asserts that the imposition of the fees, in his indigent condition, infringes his substantive due process rights. Since Willice Pendell failed to raise his due process argument before the sentencing court, we must first address whether to entertain the assignment of error. The trial court's raising of the issue, without a response from a party, does not preserve any error.

A party may not generally raise a new argument on appeal that the party did not present to the trial court. *In re Detention of Ambers*, 160 Wn.2d 543, 557 n.6, 158 P.3d 1144 (2007). RAP 2.5(a) formalizes this fundamental principle of appellate review. The first sentence of the rule reads:

> **Errors Raised for First Time on Review.** The appellate court may refuse to review any claim of error which was not raised in the trial court.

RAP 2.5. Good sense lies behind the requirement that arguments be first asserted at trial. The prerequisite affords the trial court an opportunity to rule correctly on a matter before it can be presented on appeal. *State v. Strine*, 176 Wn.2d 742, 749, 293 P.3d 1177 (2013). Abuse could follow when a party does not raise an issue below because "'a party

4

so situated could simply lie back, not allowing the trial court to avoid the potential prejudice, gamble on the verdict, and then seek a new trial on appeal.'" *State v. Weber*, 159 Wn.2d 252, 271-72, 149 P.3d 646 (2006) (quoting *State v. Sullivan*, 69 Wn. App. 167, 173, 847 P.2d 953 (1993)). The theory of preservation by timely objection also addresses several other concerns. The rule serves judicial economy by enabling trial courts to correct mistakes and thereby obviate the needless expense of appellate review, facilitates appellate review by ensuring that a complete record of the issues will be available, and prevents adversarial unfairness by ensuring that the prevailing party is not deprived of victory by claimed errors that he had no opportunity to address. *State v. Stoddard*, 192 Wn. App. 222, 227, 366 P.3d 474 (2016).

Countervailing policies support allowing an argument to be raised for the first time on appeal. For this reason, RAP 2.5(a) contains a number of exceptions. RAP 2.5(a)(3) allows an appellant to raise for the first time "manifest error affecting a constitutional right," an exception on which a criminal appellant commonly relies. *State v. Stoddard*, 192 Wn. App. at 227. Constitutional errors are treated specially under RAP 2.5(a) because they often result in serious injustice to the accused and may adversely affect public perceptions of the fairness and integrity of judicial proceedings. *State v. Scott*, 110 Wn.2d 682, 686-87, 757 P.2d 492 (1988). Prohibiting all constitutional errors from being raised for the first time on appeal would result in unjust imprisonment. *State v. Lynn*, 67 Wn. App. 339, 344, 835 P.2d 251 (1992). On the other hand, "permitting *every possible*

5

constitutional error to be raised for the first time on appeal undermines the trial process, generates unnecessary appeals, creates undesirable retrials and is wasteful of the limited resources of prosecutors, public defenders and courts." *State v. Lynn*, 67 Wn. App. at 344.

Willice Pendell raises a constitutional issue, so we must determine if the issue concerns a manifest constitutional error. Washington courts and even decisions internally have announced differing formulations for "manifest error." First, the court must determine the patent nature of any truly constitutional error. *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2009); *State v. Scott*, 110 Wn.2d at 688. Second, perhaps perverting the term "manifest," some decisions emphasize prejudice, not obviousness. The defendant must identify a constitutional error and show how, in the context of the trial, the alleged error actually affected the defendant's rights. This showing of actual prejudice makes the error "manifest," allowing appellate review. *State v. O'Hara*, 167 Wn.2d 91. A third formulation asks whether this reviewing court may find the facts in the appellate record necessary to adjudicate the claimed error. *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995); *State v. Stoddard*, 192 Wn. App. at 228 (2016).

In *State v. Stoddard*, 192 Wn. App. 222, Gary Stoddard challenged for the first time on appeal the imposition of the $100 DNA collection fee, a mandatory legal financial obligation. This court refused to address Stoddard's due process argument. The alleged error did not constitute a manifest error because the evidence before the court did

6

not show whether Stoddard could afford payment of $100. No evidence in the record showed indigency for purposes other than hiring an attorney. This court reasoned that one could be able to afford $100 but not be able to afford an attorney.

Significant differences distinguish Willice Pendell's appeal from *State v. Stoddard*. Willice Pendell challenges not only the $100 DNA collection fee but also the $200 criminal filing fee and the $500 victim penalty assessment. The total sum is $800. The record refers to Pendell living under a bridge when this incident occurred. The record also establishes that Pendell presently cannot work because of a disability. An unemployed homeless man lacks the means to pay $800. We recognize that Pendell's financial condition and employability status could change. Nevertheless, the overwhelming evidence in the record on appeal establishes the unlikelihood that Pendell can pay the legal financial obligations in the near future, if ever. For this reason, we entertain the merits of Pendell's assignment of error on appeal.

Upon a conviction in superior court, the court may order the defendant to pay restitution, costs, fines, and other assessments labeled as legal financial obligations. RCW 9.94A.760(1). The financial obligations may include restitution to the crime victims, the cost of incarceration, the cost of medical care during incarceration, a crime penalty or victim assessment fee, a crime laboratory fee, the State's criminal case filing fee, a DNA collection fee, a domestic violence assessment, the cost of a public defender, and the sheriff's service fee, among other costs. RCW 7.68.035; RCW 9.94A.760(2);

7

RCW 10.01.160; RCW 10.99.080; RCW 36.18.020(2)(h); RCW 43.43.7541. From the date of judgment, legal financial obligations bear interest at a rate of twelve percent per annum. RCW 10.82.090; RCW 4.56.110(4); RCW 19.52.020(1).

On the order imposing legal financial obligations, the trial court should impose a monthly payment required to retire the financial obligations. RCW 9.94A.760(1). The requirement that the offender pay a monthly sum toward a legal financial obligation constitutes a condition or requirement of a sentence, and the offender faces penalties for noncompliance. RCW 9.94A.760(10). To assist in collecting the financial obligations, the trial court may order a payroll deduction from the defendant's wages to pay for the obligations. RCW 9.94A.760(3). The judgment for financial obligations may also be enforced as a civil judgment. RCW 9.94A.760(4). The State may add collection fees to the sum of the financial obligations. RCW 36.18.16(29); RCW 9.94A.780(7); RCW 9.94A.760. For an offense committed on or after July 1, 2000, the trial court retains jurisdiction over the offender, for purposes of the offender's compliance with payment of the legal financial obligations, until the defendant completely satisfies the obligations, regardless of the statutory maximum for the crime. RCW 9.94A.760(4).

The law distinguishes between discretionary and mandatory legal financial obligations. RCW 7.68.035, RCW 36.18.020(2)(h), and RCW 43.43.7541 respectively mandate that the court impose a victim assessment fee, a criminal case filing fee, and the DNA collection fee regardless of the defendant's ability to pay. Trial courts must impose

8

such fees regardless of a defendant's indigency. *State v. Lundy*, 176 Wn. App. 96, 102, 308 P.3d 755 (2013). Other legal financial obligations imposed by the trial court, besides restitution, are discretionary. By statute, the court is not authorized to order a defendant to pay discretionary fees unless the defendant possesses or will possess the financial ability to pay. RCW 10.01.160(3) reads:

> The court shall not order a defendant to pay costs unless the defendant is or will be able to pay them. In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose.

Willice Pendell's sentencing court only imposed mandatory legal financial obligations.

Willice Pendell challenges the constitutionality of RCW 7.68.035; RCW 36.18.020(2)(h); and RCW 43.43.7541 under the substantive sector of the due process clause. The law presumes statutes constitutional. *State v. McCuistion*, 174 Wn.2d 369, 387, 275 P.3d 1092 (2012). Pendell carries the burden to establish that a due process violation occurred. *State v. Blank*, 131 Wn.2d 230, 235, 930 P.2d 1213 (1997).

The Fifth and Fourteenth Amendments to the United States Constitution and article I, section 3 of the Washington Constitution mandate that no person may be deprived of life, liberty, or property without due process of law. We apply the most lenient and deferential standard, the rational basis standard, when the interests at stake are not fundamental rights. *Nielsen v. Department of Licensing*, 177 Wn. App. 45, 53, 309 P.3d 1221 (2013). Under rational basis review, we determine whether a rational

9

relationship exists only between the challenged law and a legitimate state interest. *Nielsen v. Department of Licensing*, 177 Wn. App. at 53. In applying this standard, we may assume the existence of any necessary state of facts which we can reasonably conceive in determining whether a rational relationship exists between the challenged law and a legitimate state interest. *Amunrud v. Board of Appeals*, 158 Wn.2d 208, 222, 143 P.3d 571 (2006). Unlike when we apply strict scrutiny, narrow tailoring is not required under a rational basis review. *Nielsen v. Department of Licensing*, 177 Wn. App. at 53.

This court has previously rejected due process challenges to mandatory legal financial obligations. In *State v. Lundy*, 176 Wn. App. 96 (2013), we determined that mandatory obligations survive constitutional scrutiny because the sentencing scheme prevents imprisonment of indigent defendants. In *State v Mathers*, 193 Wn. App. 913, 376 P.3d 1163, *review denied*, 186 Wn.2d 1015, 380 P.3d 482 (2016), we rejected equal protection and substantive due process challenges to the mandatory legal financial obligations. Finally, in *State v. Seward*, 196 Wn. App. 579, 384 P.3d 620 (2016), *review denied*, 188 Wn.2d 1015, 396 P.3d 349 (2017), we determined mandatory financial obligations to be rationally related to legitimate state interests.

## CONCLUSION

We affirm the trial court's imposition of mandatory legal financial obligations. We deny the State costs on appeal.

10

No. 34887-3-III
*State v. Pendell*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, C.J.

WE CONCUR:

_____
Korsmo, J.

_____
Lawrence-Berrey, J.

11