# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  50032-9-II |
| Respondent, | |
| v. | |
| KAREN ANN CONWAY, | PUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Karen Ann Conway appeals a superior court commissioner's[1] order denying her motion to remit mandatory legal financial obligations (LFOs) and her motion to reconsider.[2] She argues that (1) the superior court has broad authority to remit mandatory LFOs under three statutes and its inherent authority, (2) we should extend the holding in *Fuller v. Oregon*[3] to mandatory LFOs, (3) the Clark County Court Clerk's office took enforcement action against her without conducting an inquiry into her ability to pay under *State v. Blank,*[4] (4) the superior court's findings of fact 1, 5, and 6 are clearly erroneous, and (5) the superior court's failure to remit the

---

[1] For ease of reference, this opinion refers to the court commissioner as the court.

[2] Both parties agree that the statutory amendments enacted by ENGROSSED SECOND SUBSTITUTE H.B. 1783, § 18, 65th Leg., Reg. Sess. (Wash. 2017) do not apply in these circumstances.  As a result, we do not further address this issue.

[3] 417 U.S. 40, 43, 94 S. Ct. 2116, 40 L. Ed. 2d 642 (1974).  *Fuller* upheld as constitutional an Oregon recoupment statute requiring a convicted defendant on probation to repay defense costs when he was indigent during the criminal proceedings, but subsequently acquired the ability to pay.

[4] 131 Wn.2d. 230, 242, 930 P.2d 1213 (1997).

mandatory LFOs violates her equal protection and substantive due process rights. Conway requests that we vacate the superior court's orders and remand for entry of an order striking the victim penalty assessment fee and the criminal filing fee. We reject all of her arguments and affirm.

FACTS

In March 2007, Conway pleaded guilty in the Clark County Superior Court to one count of maintaining a dwelling for controlled substances. The superior court sentenced her and ordered her to pay various LFOs, including two mandatory LFOs: a $500 victim penalty assessment fee (VPA) under former RCW 7.68.035 (2000) and a $200 criminal filing fee under former RCW 9.94A.505 (2002).

Conway, who was receiving Supplemental Security Income (SSI) due to a disability, made some, but not all, of the ordered payments toward the judgment and sentence. The Clark County Superior Court's Collections Unit periodically sent Conway notices to appear for a payment review and either make a payment or explain why she could not do so. These notices stated that if she failed to pay or appear, she could be placed in custody. At one point, the clerk's office e-mailed Conway, explaining that she would be required to provide an annual letter to verify her SSI status.

In 2016, Conway filed a motion to remit all LFOs except the VPA fee and the criminal filing fee based on her indigency and SSI status. The superior court conducted a hearing and entered written findings of fact and conclusions of law. The court found that Conway was indigent and had been on SSI for 27 years.

In its order, the superior court remitted the balance of interest owing, the criminal fine, the court appointed attorney fee, the deoxyribonucleic acid (DNA) fee (which was discretionary at the

time), the crime lab fee, the drug fund fee, and the balance of collection fees. As to the two remaining mandatory LFOs, the VPA fee and the criminal filing fee, the court ruled that Conway owed a balance of $493.55 for the VPA fee and $197.41 for the criminal filing fee, but it ordered that "the court cannot require her to pay on the remaining mandatory LFOs at this time." Clerk's Papers (CP) at 378.

Conway filed a motion to reconsider in December 2016, arguing for the first time that the imposition of the two mandatory LFOs violated her equal protection and substantive due process rights. The superior court denied the motion and entered the following additional relevant findings:

> 1. . . . [T]he Clark County Clerk's office did not unlawfully collect statutorily authorized collection fees and that the [c]ourt has no authority to direct the [c]ounty [c]lerk as to application of payments received from Ms. Conway.
>
> . . . .
>
> 5. . . . [T]his [c]ourt can conceive of circumstances wherein Ms. Conway may be able to pay the fees and assessments in the future.
>
> 6. . . . The [c]ourt finds that there has never been enforcement in Ms. Conway's case. Ms. Conway has never been brought to court on a [m]otion for nonpayment. Sanctions have never been sought or imposed against her for nonpayment. The [c]ourt declines to find, as requested by Ms. Conway, that the State/Clark County Clerk's office was on notice and therefore required to conduct an inquiry regarding payment of LFO's when Ms. Conway was brought to court on probation violations unrelated to LFO's. Again, no enforcement sanctions were sought against Ms. Conway to trigger a *Blank* inquiry.

CP at 399-400.

Conway appeals both orders; a commissioner of this court granted discretionary review.

3

ANALYSIS

I. LEGAL PRINCIPLES

Our court has recognized that the effects on an indigent defendant remain the same whether the LFOs are mandatory or discretionary. *State v. Mathers*, 193 Wn. App. 913, 916, 376 P.3d 1163 (2016). "However, until there are legislative amendments or Supreme Court changes in precedent, we must recognize these distinctions and adhere to the principles of *stare decisis."* *Mathers*, 193 Wn. App. at 916. The court's authority to impose LFOs is statutory. *Mathers*, 193 Wn. App. at 917 (citing RCW 10.01.160(3)). The legislature has authorized the courts to impose a VPA fee and a criminal filing fee as mandatory LFOs.

The VPA fee is authorized under former RCW 7.68.035(1)(a) (2000) which states:

> When any person is found guilty in any superior court of having committed a crime . . . there *shall be imposed by the court* upon such convicted person a penalty assessment. The assessment shall be in addition to any other penalty or fine imposed by law and shall be five hundred dollars for each case or cause of action that includes one or more convictions of a felony or gross misdemeanor and two hundred fifty dollars for any case or cause of action that includes convictions of only one or more misdemeanors.

(Emphasis added).

The criminal filing fee is authorized under former RCW 36.18.020(2)(h) (2005) which states:

> Upon conviction or plea of guilty, upon failure to prosecute an appeal from a court of limited jurisdiction as provided by law, or upon affirmance of a conviction by a court of limited jurisdiction, a defendant in a criminal case *shall be liable* for a fee of two hundred dollars.

(Emphasis added).

## II. LEGISLATIVE INTENT

Washington courts have consistently held that a trial court need not consider a defendant's past, present, or future ability to pay when it imposes either the VPA fee or the criminal filing fee. *See State v. Curry,* 118 Wn.2d 911, 917-18, 829 P.2d 166 (1992) (VPA fees are mandatory notwithstanding defendant's ability to pay); *see also State v. Clark,* 191 Wn. App. 369, 374, 362 P.3d 309 (2015) (VPA fees and criminal filing fees are mandatory obligations not subject to a defendant's ability to pay); *State v. Lundy,* 176 Wn. App. 96, 102, 308 P.3d 755 (2013); *State v. Kuster,* 175 Wn. App. 420, 424-25, 306 P.3d 1022 (2013); *State v. Thompson,* 153 Wn. App. 325, 337, 223 P.3d 1165 (2009); *State v. Williams,* 65 Wn. App. 456, 460, 828 P.2d 1158, 840 P.2d 902 (1992).

"Washington courts consistently treat the [mandatory LFO] statutes as separate and distinct from the discretionary LFO statute and the restitution statute." *Mathers*, 193 Wn. App. at 919. "Where the legislature has had time to correct a court's interpretation of a statute and has not done so, we presume the legislature approves of our interpretation." *Mathers*, 193 Wn. App. at 918.

### III. AUTHORITY TO REMIT MANDATORY LFOS

A. STATUTORY AUTHORITY TO REMIT MANDATORY LFOS

Conway argues that the superior court has discretion and broad statutory authority to remit the mandatory LFOs at issue and erred by refusing to do so. She cites former RCW 9.94A.6333 (2008), former RCW 9.94A.634 (2002)[5], and former RCW 10.01.180(4) (2010). We disagree

---

[5] This statute was recodified as RCW 9.94B.040 by Laws 2008, ch. 231, § 56, effective Aug. 1, 2009.

because none of the statutes Conway cites authorize the superior court to remit the mandatory LFOs. Thus, her claim fails.

"Statutory interpretation is a question of law that we review de novo." *State v. Van Noy*, 3 Wn. App. 2d 494, 497, 416 P.3d 751 (2018). The primary goal of statutory interpretation is to determine and give effect to the legislature's intent. *Van Noy*, 3 Wn. App. 2d at 498. To determine the legislature's intent, we first look to the plain language of the statute, consider the language of the provisions in question, and determine how the provisions fit within the context of the statute and the statutory scheme as a whole. *Van Noy*, 3 Wn. App. 2d at 498. We attempt to harmonize the provisions within a statute so that no portion is rendered superfluous or meaningless. *State v. LaPointe*, 1 Wn. App. 2d 261, 269, 404 P.3d 610 (2017). "If the plain language of the statute is unambiguous, then [our] inquiry is at an end." *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007).

Former RCW 9.94A.6333 states,

> (2) If an offender fails to comply with any of the conditions or requirements of a sentence the following provisions apply:
>
> . . . .
>
> (d) If the court finds that the violation was not willful, the court may modify its previous order regarding payment of legal financial obligations and regarding community restitution obligations[.]

Former RCW 9.94A.634 states,

> (3) If an offender fails to comply with any of the requirements or conditions of a sentence the following provisions apply:
>
> . . . .
>
> (d) If the court finds that the violation was not willful, the court may modify its previous order regarding payment of legal financial obligations and regarding community restitution obligations.

Former RCW 10.01.180(4) states that "[i]f it appears to the satisfaction of the court that the default in the payment of a fine or costs is not contempt, the court may enter an order allowing the defendant additional time for payment, reducing the amount thereof or of each installment or revoking the fine or costs or the unpaid portion thereof in whole or in part."

None of these statutes authorize the superior court to remit the VPA fee or the criminal filing fee here. Former RCW 9.94A.6333 and former RCW 9.94A.634 are general statutes that apply when defendants fail to comply with conditions or requirements of their sentences but the violations are not willful and relate to community restitution obligations. Neither of these statutes authorize a court to remit the VPA fee and the criminal filing fee. Thus, neither former RCW 9.94A.6333 nor former RCW 9.94A.634 apply.

Former RCW 10.01.180(4) applies if a defendant is in default, but not in contempt, for nonpayment of fines or costs and grants the court discretion to allow a defendant additional time to pay, reduce the amount of fines or costs, or revoke the fines or costs. The VPA fee and the criminal filing fee are not "fines" or "costs" as defined in RCW 10.01.180(4). Nor does Conway argue that they are fines or costs. Thus, former RCW 10.01.180(4) does not apply.

We also note that Conway's original motion to remit was filed under former RCW 10.01.160(4) (2015), the statute in effect at the time applicable to discretionary costs. That statute authorizes a superior court to remit certain LFOs, "[i]f it appears to the satisfaction of the court that payment of the amount due will impose manifest hardship on the defendant or the defendant's immediate family, the court may remit all or part of the amount due in costs, or modify the method of payment under RCW 10.01.170." Former RCW 10.01.160(4).

On appeal, Conway does not argue that former RCW 10.01.160(4) applies here. As discussed, she argues that other statutes apply to authorize the court to remit the mandatory LFOs at issue. Because we adhere to the statutory principle that a specific statute controls over a general statute, we hold that the more specific remittance statute, RCW 10.01.160(4), controls, but that it does not authorize the court to remit the mandatory LFOs at issue here. *See State v. Flores*, 194 Wn. App. 29, 36-37, 374 P.3d 222 (2016). Because the statutory authority Conway cites does not authorize the court to remit the two mandatory LFOs at issue, her argument fails.

B. THE COURT'S INHERENT AUTHORITY TO REMIT

Conway also argues that the superior court has the inherent authority to remit mandatory LFOs under *State v. Johnson*, 54 Wn. App. 489, 491, 774 P.2d 526 (1989). Because *State v. Johnson* does not apply, Conway's argument fails.

Division I of this court held in *Johnson*, that "in the absence of statutory language indicating otherwise, a sentencing court has jurisdiction to enforce the requirements of a sentence imposed until those requirements are met and/or a certificate of discharge is [issued] upon completion of [the] sentence." *Johnson*, 54 Wn. App. at 491. *Johnson* addressed a court's enforcement of a sentence, not a court's remittance of mandatory LFOs. *Johnson*, 54 Wn. App. at 490. Thus, *Johnson* does not apply here.

Conway does not provide any other authority to support her claim that the court has inherent authority to remit mandatory LFOs. "If a party does not provide a citation to support an asserted proposition, the court may 'assume that counsel, after diligent search, has found [no supporting authority].'" *State v. Arredondo*, 188 Wn.2d 244, 262, 394 P.3d 348 (2017) (citing *State v. Young*, 89 Wn.2d 613, 625, 574 P.2d 1171 (1978) (quoting *DeHeer v. Seattle Post-*

*Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962)). Thus, we hold that Conway's argument fails.

C. *FULLER V. OREGON*

Conway argues that enforcement of the mandatory LFOs would infringe on her constitutional rights under *Fuller v. Oregon* and asks us to extend *Fuller* to mandatory LFOs. *Fuller* concerned an Oregon recoupment statute requiring a defendant on probation to reimburse the cost of appointed counsel. *Fuller*, 417 U.S. 40, 54, 94 S. Ct. 2166, 40 L. Ed. 2d 642 (1974). The United States Supreme Court upheld the statute as constitutional because it contained sufficient procedural safeguards to protect against oppressive application. *Fuller*, 417 U.S. at 54. In *Fuller*, the trial court found the defendant indigent at the time of the criminal proceedings, but imposed discretionary costs after he subsequently acquired the ability to pay. *Fuller,* 417 U.S. at 42. In discussing the defendant's obligation to repay defense costs under the statute, the Court observed that the Oregon statute was never mandatory, "[r]ather, several conditions must be satisfied," and one of the conditions was that the defendant was convicted. *Fuller*, 417 U.S. at 44-45.

Conway's arguments related to *Fuller* have been previously rejected. *See Mathers*, 193 Wn. App. at 926 (rejecting equal protection and Fourteenth Amendment arguments against imposition of mandatory LFOs). Therefore, we decline to extend *Fuller* to mandatory LFOs, and thus, we hold that Conway's argument fails.

IV. ENFORCEMENT ACTION

Conway next argues that the county clerk took enforcement action against her without lawful authority and without conducting an inquiry into her ability to pay under *State v. Blank*.[6,7] She also argues that findings of fact 1 and 6 relating to the clerk's actions are "clearly erroneous," and finding of fact 5, that the court can conceive of circumstances where Conway would be able to pay and no enforcement action is taken, is also "clearly erroneous." Br. of Appellant at 17, 23. We disagree.

A. CLERK'S AUTHORITY

RCW 9.94A.760(5) authorizes the county clerk "to collect unpaid legal financial obligations at any time the offender remains under the jurisdiction of the court for purposes of his or her legal financial obligations." RCW 9.94A.760(14) also states that "[t]he county clerk may access the records of the employment security department for the purposes of verifying employment or income, seeking any assignment of wages, or performing other duties necessary to the collection of an offender's legal financial obligations."

Conway appears to argue that the county clerk did not have the authority to require her to verify annually her SSI status. This argument fails because the county clerk has statutory authority under RCW 9.94A.760(14) to verify income as necessary for the collection of LFOs. Under RCW 9.94A.760(14), the clerk's office has the authority to require Conway to verify her SSI status annually. Thus, her argument fails.

---

[6] 131 Wn.2d. 230, 242, 930 P.2d 1213 (1997).

[7] We note that her arguments here do not relate to whether a court has the authority to remit the two mandatory LFOs at issue.

B. *STATE V. BLANK* INQUIRY

Conway next argues that, "the [c]lerk's office continues to enforce the mandatory LFOs against Ms. Conway by requiring her to submit yearly proof of her SSI income. Under *Blank*, this is unconstitutional because [she] lacks the present and future ability to pay due to her enduring indigency." Br. of Appellant at 21. We disagree because no enforcement action has been taken against Conway related to the mandatory LFOs at issue to trigger an inquiry into her ability to pay under *State v. Blank*.

"[T]he Constitution does not require an inquiry into ability to pay at the time of sentencing. Instead the relevant time is the point of collection and when sanctions are sought for nonpayment." *Blank*, 131 Wn.2d 230, 242, 930 P.2d 1213 (1997). "It is at the point of enforced collection . . . , where an indigent 'may be faced with the alternatives of payment or imprisonment, that he may assert a constitutional objection on the ground of his indigency.'" *Curry*, 118 Wn.2d at 917 (alternation in original) (quoting *State v. Curry,* 62 Wn. App. 676, 681-82, 814 P.2d 1252 (1991)).

Here, there is no evidence that Conway was ever subject to a motion for nonpayment, motion for default, motion for sanctions for nonpayment, or motion for imprisonment for nonpayment of the two mandatory LFOs. Thus, because there was no enforcement action taken against Conway, the court was not required at this stage to conduct an inquiry into Conway's ability to pay under *State v. Blank*. Thus, her argument fails.

C. FINDINGS OF FACT 1 AND 6

Conway argues that the superior court's findings of fact 1 and 6 are clearly erroneous. We disagree.

11

Generally, we review a court's findings of fact for substantial evidence. *State v. Smith*, 185 Wn. App. 945, 956, 344 P.3d 1244 (2015). However, a court's "factual determination concerning a defendant's resources and ability to pay is reviewed under the clearly erroneous standard." *State v. Clark*, 191 Wn. App. at 372 (internal quotation marks omitted). Under a clearly erroneous standard, an application of law to facts is "clearly erroneous" if, after reviewing all evidence, we are left with the definite and firm conviction that a mistake has been committed. *Whatcom County Fire Dist. No. 21 v. Whatcom County*, 171 Wn.2d 421, 427, 256 P.3d 295 (2011).

The court's finding of fact 1 stated:

[T]he Clark County Clerk's office did not unlawfully collect statutorily authorized collection fees and that the [c]ourt has no authority to direct the [c]ounty [c]lerk as to application of payments received from Ms. Conway.

CP at 399.

The court's finding of fact 6 stated:

The [c]ourt finds that there has never been enforcement in Ms. Conway's case. Ms. Conway has never been brought to court on a [m]otion for nonpayment. Sanctions have never been sought or imposed against her for nonpayment. The [c]ourt declines to find, as requested by Ms. Conway, that the State/Clark County Clerk's office was on notice and therefore required to conduct an inquiry regarding payment of LFO's when Ms. Conway was brought to court on probation violations unrelated to LFO's. Again, no enforcement sanctions were sought against Ms. Conway to trigger a *Blank* inquiry.

CP at 400.

As discussed above, there is no evidence in the record that the clerk's office took enforcement action against Conway. There is no evidence that Conway was ever subject to a motion for nonpayment, motion for default, motion or for sanctions for nonpayment, or motion for

imprisonment for nonpayment of the two mandatory LFOs. We hold that Findings of fact 1 and 6 are not clearly erroneous and Conway's argument fails.

D. COURT'S STATEMENT – FINDING OF FACT 5

Conway next challenges the following portion of finding of fact 5:[8]

Like the majority [in *State v. Seward*[9]], this [c]ourt can conceive of circumstances wherein Ms. Conway may be able to pay the fees and assessment in the future.

CP at 400. Conway argues that the superior court's "finding," that it "could conceive of circumstances" regarding her future ability to pay, is clearly erroneous. Br. of Appellant at 17.

The superior court's statement is not a finding of fact that we review. Instead, the court's statement is a legal holding mirroring language from the majority in *State v. Seward* holding that the court may assume the existence of any necessary state of facts which it can reasonable conceive in determining whether a rational relationship exists between the challenged law and a legitimate state interest. 196 Wn. App. at 585. Thus, we hold that Conway's argument fails.

V. CONSTITUTIONAL ISSUES

A. EQUAL PROTECTION

Conway argues that her equal protection rights were violated because the superior court failed to remit the mandatory LFOs even though she lacks the present and future ability to pay. However, Conway fails to adequately brief the equal protection issue. *Peste v. Mason County*,

---

[8] This portion of finding of fact 5 is mislabeled as a finding of fact. We treat mislabeled findings of fact or conclusions of law as what they actually are, and review them accordingly. *Willener v. Sweeting*, 107 Wn.2d 388, 394, 730 P.2d 45 (1986).

[9] 196 Wn. App. 579, 384 P.3d 620 (2016), *review denied*, 188 Wn.2d 1015, 396 P.3d 349 (2017).

133 Wn. App. 456, 469 n.10, 136 P.3d 140 (2006) (We do not address constitutional arguments that are not supported by adequate briefing.). Thus, we decline to review this argument.

B. SUBSTANTIVE DUE PROCESS

Conway next argues that her substantive due process rights were violated because the superior court failed to remit the mandatory LFOs at issue when she lacks the present and future ability to pay. We disagree because there is a rational basis for imposing the mandatory costs.

"We review constitutional challenges de novo." *State v. Beaver*, 184 Wn.2d 321, 331, 358 P.3d 385 (2015). A person claiming a due process violation has the burden of proof. *See Seward*, 196 Wn. App. at 584. "Statutes are presumed to be constitutional." *Blank*, 131 Wn.2d at 235.

Our federal and state constitutions prohibit the deprivation of life, liberty, or property without due process of law. U.S. CONST. amends. V, XIV; WASH. CONST. art I, § 3. The due process clause of the federal constitution confers both procedural and substantive protections. *Beaver*, 184 Wn.2d at 332. Substantive due process "bars wrongful and arbitrary government conduct." *Beaver*, 184 Wn.2d at 332. Government action violates substantive due process if a deprivation of life, liberty, or property is substantively unreasonable or is not supported by a legitimate justification. *Nielsen v. Dep't of Licensing*, 177 Wn. App. 45, 53, 309 P.3d 1221 (2013).

Where, as here, the government's action does not interfere with a fundamental right, we apply a highly deferential rational basis standard. *Amunrud v. Bd. of Appeals*, 158 Wn.2d 208, 222, 143 P.3d 571 (2006). Under a rational basis review, we determine whether a rational relationship exists between the challenged law and a legitimate state interest. *Amunrud*, 158 Wn.2d at 222. In making this determination, we "may assume the existence of any necessary state

of facts which [we] can reasonably conceive." *Amunrud,* 158 Wn.2d at 222. The rational basis standard is highly deferential to the challenged action. *Nielsen*, 177 Wn. App. at 53.

Washington courts have consistently rejected identical arguments that the imposition of mandatory LFOs violate substantive due process. *Mathers* held that the imposition of the VPA fee and the DNA fee did not violate substantive due process, following *Curry.* 193 Wn. App. at 928. Our Supreme Court held in *Curry,* "that the VPA statute did not violate due process because 'no defendant will be incarcerated for his or her inability to pay the penalty assessment unless the violation is willful.'" *Mathers*, 193 Wn. App. at 928 (quoting *Curry*, 118 Wn.2d at 918).

In *Seward*, we held that imposing mandatory LFOs, the VPA fee and the criminal filing fee, were rationally related to legitimate state interests because (1) "the VPA serves the legitimate state interest of funding comprehensive programs to encourage and facilitate testimony by victims and witnesses of crimes," and (2) "the [criminal] filing fee serves the legitimate state interest in compensating the court clerks for their official services." *Seward*, 196 Wn. App. at 584-85. Thus, Conway's substantive due process claim fails.

We reject all of Conway's arguments and affirm.

SUTTON, J.

We concur:

LEE, A.C.J.

WORSWICK, J.

15