# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 53955-1-II |
| Respondent, | |
| v. | PUBLISHED OPINION |
| TERRY EUGENE GAINES, | |
| Appellant. | |

MAXA, J. – Terry Gaines challenges the superior court's denial of his motion to remove his legal financial obligation (LFO) account from AllianceOne Receivables Management, Inc. (AllianceOne), a private debt collection agency, and return the account to the superior court clerk's office. The superior court imposed LFOs, including restitution of $1.8 million, after Gaines's conviction of multiple counts of trafficking in stolen property and money laundering related to the theft and resale of printer ink cartridges. When Gaines failed to make payment arrangements after being released from confinement, the court clerk referred Gaines's LFO account to AllianceOne, and a collection fee of $738,312.68 was added to Gaines's LFOs as authorized under RCW 19.16.500(1)(b).

In denying Gaines's motion, the superior court stated that it did not have the authority to direct the court clerk to remove his LFO account from AllianceOne. We disagree, and hold that the superior court erred in failing to recognize that it retained the authority under RCW 36.18.190 to remove Gaines's LFO accounts from AllianceOne despite the court clerk's

authority under the same statute to contract with AllianceOne. Accordingly, we reverse and remand for the superior court to exercise its discretion in considering whether to remove Gaines's LFO account from the collection agency.[1]

FACTS

*Background*

In March 2012, Gaines was convicted in Pierce County of 34 counts of first degree trafficking in stolen property and eight counts of money laundering. At sentencing, the superior court imposed $1.8 million in restitution and $2,300 in other LFOs. The court also sentenced Gaines to 108 months of confinement.

Regarding LFOs, the judgment and sentence stated that all payments must be made in accordance with the court clerk's policies. In addition, the judgment and sentence stated, "The defendant shall pay the costs of services to collect unpaid legal financial obligations per contract or statute. RCW 36.18.190, 9.94A.780 and 19.16.500." Clerk's Papers (CP) at 30. Later, $8,685.02 in appellate costs were added to Gaines's LFOs.

In January 2018, Gaines was released from confinement. Interest at the rate of 12 percent per year had accrued while he was in custody, increasing his total LFO debt to over $3.1 million.

In April, the court clerk's office sent Gaines a letter entitled "Notice." CP at 69. The notice noted that Gaines had been making monthly payments, apparently while he was incarcerated. But the notice stated that it was now necessary for Gaines to make new payment arrangements with the clerk's office. The notice continued:

---

[1] Gaines also argues that referring his LFO account to a collection agency and adding over $700,000 to his LFOs violated substantive and procedural due process and constituted an excessive fine in violation of the Eighth Amendment of the United States Constitution. Because of our holding, we do not address these constitutional issues. However, we do not disagree with the concurring opinion.

> Within 30 days from the date of this notice you must pay the outstanding balance due or make new arrangements for payment with this office. If you do not respond to this notice within the 30 days we will turn this case over to our Commercial Collection Agent. As of that time you will be required to deal ONLY with the collection agent regarding payments.

CP at 69.

Gaines did not contact or make new payment arrangements with the court clerk's office. After more than 30 days passed, the clerk's office referred Gaines's judgment to AllianceOne, a private debt collection agency. AllianceOne subsequently sent Gaines a notice stating that his LFO account had been placed with AllianceOne for immediate collection efforts. The notice stated that the amount owing now included a fee in the amount of $738,312.68. This collection fee constituted 19 percent of the total judgment.

In July, Gaines visited the court clerk's office. The next month, he began to pay $10 per month toward his outstanding LFOs.

*Relationship Between Pierce County and AllianceOne*

Pierce County and AllianceOne executed a "Letter of Establishment" effective September 2012. CP at 122. The letter, signed by the Pierce County superior court clerk, stated that Pierce County wished to utilize AllianceOne to provide collection services for the recovery of unpaid LFOs, and that AllianceOne's fee would be 19 percent of each payment received for in-state collections.

The record contains a "Collection Services Agreement" between the Pierce County Superior Court and AllianceOne that provided for a 19 percent collection fee. CP at 75-79. The agreement stated that AllianceOne would be consulted before an assigned account was recalled and an appendix stated that "a particular account may be withdrawn at any time for any reason." CP at 89. The agreement contained a signature line for the Pierce County clerk on behalf of the

Pierce County Superior Court, but it was unsigned. Neither party disputes that this agreement was executed.

*Motion to Remove LFO Account from AllianceOne and Remit Certain LFOs*

In May 2019, Gaines filed a motion in superior court to remove his LFO account from AllianceOne and return the account to the superior court clerk's office, to remit the collection fee assessed by AllianceOne, to waive any nonrestitution interest accrued on the LFO account, and to waive appellate costs. AllianceOne filed a memorandum in opposition to the motion.

The superior court essentially denied the request, stating, "I don't believe I have the authority to tell the Clerk what to do." Report of Proceedings at 12. The court stated that it would waive nonrestitution interest and appellate costs, but stated that there had not been an adequate showing of hardship for the remittance of other LFOs.

Gaines appeals the superior court's denial of his motion to remove his LFO account from AllianceOne.

ANALYSIS

Gaines argues that the superior court had authority to remove his LFO account from AllianceOne under RCW 36.18.190, and that the trial court erred in failing to recognize that authority. We agree.

A. STANDARD OF REVIEW

There is no published case that addresses the applicable standard of review for Gaines's motion to remove an LFO account from a collection agency. The State argues that we should review the superior court's decision for an abuse of discretion. We generally review discretionary superior court decisions for abuse of discretion. *See In re Pers. Restraint of Rhome*, 172 Wn.2d 654, 667-68, 260 P.3d 874 (2011). However, Gaines based his motion on

RCW 36.18.190 and the superior court stated that it did not believe it had authority to consider Gaines's motion. Therefore, we must engage in an interpretation of that statute. We review questions of statutory interpretation de novo. *State v. Brown*, 194 Wn.2d 972, 975, 454 P.3d 870 (2019).

In addition, the superior court's failure to recognize that it has discretion to grant a motion is itself an abuse of discretion. *See State v. McFarland*, 189 Wn.2d 47, 56, 399 P.3d 1106 (2017). And an erroneous interpretation of the law necessarily constitutes an abuse of discretion. *State v. B.O.J.*, 194 Wn.2d 314, 322-23, 449 P.3d 1006 (2019).

B.    INTERPRETATION OF RCW 36.18.190

The question here is whether the superior court has authority under RCW 36.18.190 to recall an LFO account from a collection agency after the court clerk has referred the account to the collection agency and a collection fee has been added to the defendant's LFOs. We hold that the superior court does have that authority.

1.    Statutory Provisions

RCW 9.94A.760(5) and RCW 9.94A.760(9) generally authorize court clerks to collect unpaid LFOs. RCW 36.18.190 specifically addresses the use of collection agencies to recover LFOs:

> *Superior court clerks may contract with collection agencies* under chapter 19.16 RCW . . . *for the collection of unpaid court-ordered legal financial obligations* as enumerated in RCW 9.94A.030 that are ordered pursuant to a felony or misdemeanor conviction. . . . The costs for the agencies or county services shall be paid by the debtor. The superior court may, at sentencing or at any time within ten years, assess as court costs the moneys paid for remuneration for services or charges paid to collection agencies or for collection services.
> . . . .
>
> The servicing of an unpaid court obligation does not constitute assignment of a debt, and *no contract with a collection agency may remove the court's control over unpaid obligations owed to the court*.

(Emphasis added.)

The first sentence of the statute references chapter 19.16 RCW. RCW 19.16.500(1)(a) states that a public agency may retain collection agencies to collect public debts, including restitution being collected on behalf of a crime victim. In addition, RCW 19.16.500(1)(b) addresses the collection agency fee:

> Any governmental entity as described in (a) of this subsection using a collection agency *may add a reasonable fee, payable by the debtor, to the outstanding debt for the collection agency fee* incurred or to be incurred. The amount to be paid for collection services shall be left to the agreement of the governmental entity and its collection agency or agencies, but a contingent fee of up to fifty percent of the first one hundred thousand dollars of the unpaid debt per account and *up to thirty-five percent of the unpaid debt over one hundred thousand dollars per account is reasonable*.

(Emphasis added.)

However, the last sentence of RCW 36.18.190 expressly provides that regardless of any collection agency contract, the superior court retains "control over unpaid obligations owed to the court."

2. Statutory Interpretation

The primary goal of statutory interpretation is to determine and give effect to the legislature's intent. *Brown*, 194 Wn.2d at 975. To determine legislative intent, we first look to the plain language of the statute. *Id*. at 975-76. We consider the language of the provision in question, the context of the statute in which the provision is found, related provisions, and the statutory scheme as a whole. *State v. Larson*, 184 Wn.2d 843, 848, 365 P.3d 740 (2015). If the plain meaning of a statute is unambiguous, we must apply that plain meaning as an expression of legislative intent. *Id*.

3.  Analysis

RCW 36.18.190 expressly authorizes superior court clerks to refer LFO accounts to collection agencies. And as Gaines acknowledges, this statute does not expressly authorize a court to remove an LFO account from a collection agency once a court clerk has referred the account to the agency.

However, RCW 36.18.190 also expressly authorizes superior courts to retain control over unpaid LFOs. The plain statutory language shows that this provision takes precedence over the court clerks' authority. RCW 36.18.190 states that "no contract with a collection agency may remove" that control.

The State asserts that the reference in RCW 36.18.190 to the superior court's "control over unpaid obligations owed to the court" recognizes only that the superior court retains authority to modify or rescind the amount of LFOs. But the crucial fact here is that the collection agency fee *does* affect the amount of LFOs. As noted above, RCW 19.16.500(1)(b) allows the court clerk to add the collection fee "to the outstanding debt"; here, Gaines's LFOs. And RCW 36.18.190 itself allows the superior court to "assess *as court costs* the moneys paid for remuneration for services or charges paid to collection agencies or for collection services." (Emphasis added.)

Because the superior court retains control over the amount of LFOs under RCW 36.18.190, the court necessarily has the authority to reduce the amount of the LFOs by removing an LFO account from a collection agency and thereby removing the collection agency fee from the LFO account.

This interpretation of RCW 38.18.190 is consistent with the Collection Services Agreement between the Pierce County Superior Court and AllianceOne. The agreement

contemplates that an account assigned to AllianceOne may be recalled. And an appendix to the agreement states that "a particular account may be withdrawn at any time for any reason." CP at 89.

We conclude that the language in RCW 36.18.190 that the superior court retains "control over unpaid obligations owed to the court" authorizes the superior court to remove an LFO account from a collection agency even after a superior court clerk has referred the account to the agency. Whether a superior court actually will choose to remove the LFO from a collection agency will involve the exercise of the court's discretion.

The superior court denied Gaines's motion to remove his LFO account from AllianceOne because the court did not believe that it had the authority to grant the motion. We hold that the superior court erred in failing to recognize that it did have that authority under RCW 36.18.190.

CONCLUSION

We reverse and remand for the superior court to exercise its discretion in considering whether to remove Gaines's LFO account from the collection agency.

MAXA, J.

I concur:

GLASGOW, J.

WORSWICK, J. (concurring) — I concur in and completely agree with the lead opinion. I write separately to express concern over the practices and effects of court cost collection practices.

When initially assessing legal financial obligations (LFOs), trial courts have an obligation to carefully consider each defendant's ability to pay before imposing discretionary LFOs. *State v. Blazina*, 182 Wn.2d 827, 838, 344 P.3d 680 (2015). In making this individualized inquiry, the court must consider factors such as incarceration and other debts, and are guided by GR 34.[2] "[I]f someone does meet the GR 34 standard for indigency, courts should seriously question that person's ability to pay LFOs." *Blazina*, 182 Wn.2d at 839.

The court in *Blazina*, noted that organizations have chronicled problems indigent defendants incur when saddled with LFOs. 182 Wn.2d at 835. The court discussed how interest accrual and collection costs create an untenable situation when defendants are able to pay only modest amounts against their fines, and who see their balances only increase with time. 182 Wn.2d at 836. The court recognized that these unpaid fines tether individuals to the courts indefinitely, preventing their full reentry into society. 182 Wn.2d at 835-36. These financial burdens impose an unequal burden on people of color and the poor. Bryan L. Adamson, *Debt Bondage: How Private Collection Agencies Keep the Formerly Incarcerated Tethered to the Criminal Justice System*, 15 Nw. J.L. & Soc. Pol'y 305, 318 (2020).

In 2018, the legislature recognized these LFO burdens, and passed Engrossed Second Substitute House Bill 1783, 65th Leg., Reg. Sess. (Wash. 2018), which amended two statutes that prohibit the imposition of certain LFOs on indigent defendants. LAWS OF 2018, ch. 269.

---

[2] GR 34 describes the ways a person may prove he or she is indigent for the purpose of seeking a waiver of filing fees and surcharges.

Apparently, concern about debt bondage and disproportionate effects of LFOs ends when the judgment and sentence is signed. With minimal notice, a clerk's office can send an LFO account to a private collection agency. RCW 19.16.500(1)(b) allows collection agencies to immediately impose a contingent fee of up to 50 percent of the total debt (which often includes compounded interest), deeming this amount to be "reasonable."

Here, the State argues that Terry Gaines was supposed to recognize that he would be subject to more than $700,000 in additional court costs because his judgment and sentence, entered in 2012, provided he could be charged for the costs of collecting unpaid fees and cited to the relevant statutes. And he was supposed to understand, when the clerk sent him a letter nearly six years later in 2018, that a collection fee of over $700,000 would be instantly added to his court costs if he did not make new payment arrangements with the court clerk, even though the letter neither mentioned any additional fees or costs, nor referred to the statutes allowing such fees. The letter stated that Gaines was in compliance with the LFO obligations imposed in his judgment and sentence, and it contained no express warning mentioning any additional costs or fees or any indication of how exorbitant the fee could be.

In addition to the contingent fee, Gaines tells us that AllianceOne Receivables Management Inc. imposes even more fees for servicing the account and setting up payment plans. These fees are mechanically added, without any individualized consideration given to the defendant's financial or indigent status. Ironically, it is the defendants' inability to pay that lands them in this situation.

Gaines asks this court to hold that these practices violate his due process rights and violate the Eighth Amendment. We do not reach that question today. But all the thought, concern, and consideration given to formulating rules to protect indigent defendants from

10

crushing LFO debt should extend beyond the sentencing date.  Any protections are illusory so long as courts allow private collection agencies to add exorbitant fees to LFOs.

_____<br>
Worswick, P.J.

I concur:

_____<br>
Glasgow, J.