Filed
Washington State
Court of Appeals
Division Two

December 6, 2022

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 55675-8-II |
| Respondent, | |
| v. | |
| MICHAEL JOSEPH BRADY, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, P.J. — Several years after he was convicted of multiple crimes, Michael Joseph Brady filed two motions to remit certain financial legal obligations (LFOs) and a motion for clarification of his judgment and sentence concerning his community custody. The trial court issued an order modifying Brady's judgment and sentence that struck some of the LFOs, but the court denied his motion for clarification. Brady appeals both orders.

We hold that: (1) the trial court was without authority to modify Brady's judgment and sentence in response to a motion to remit, (2) the trial court erred in determining that it did not have authority to remit appellate costs, (3) the trial court did not err when it failed to reallocate the funds Brady paid prior to making his motion, and (4) the trial court did not err when it denied his motion to clarify whether his community custody sentence was imposed under RCW 9.94A.715(1)(a) or (b). Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

No. 55675-8-II

FACTS

In October 2002, a trial court found Michael Brady guilty of 7 counts of first degree child molestation, 17 counts of first degree rape of a child, and 6 counts of sexual exploitation of a minor, following a bench trial. Brady was originally sentenced to 636 months of confinement and 36-48 months of community custody.[1] The trial court found Brady indigent for purposes of appeal. Following a successful personal restraint petition (PRP), the court vacated Brady's 2002 sentence and remanded the case for resentencing. The trial court again found Brady indigent for purposes of appeal. Brady was resentenced to 318 months of confinement and 36-48 months of community custody. The trial court also imposed $1,151.92 in LFOs for restitution, crime victim assessment, and criminal filing fees.

Following several PRPs and direct appeals the Washington Supreme Court and this court approved the State's appellate cost bills. Subsequently, the trial court issued orders imposing over $8,000 in appellate costs. *State v. Brady*, No. 52120-2-II at 1 (Wash. Ct. App. Jan. 22, 2020) (unpublished).[2]

---

[1] Brady's 2002 judgment and sentence is not included in the record, however, the parties do not dispute the length and conditions of Brady's original sentence.

[2] https://www.courts.wa.gov/opinions/pdf/D2%2052120-2-II%20Unpublished%20Opinion.pdf

No. 55675-8-II

In 2018, Brady filed two motions to remit his LFOs under former RCW 10.01.160 and former RCW 10.73.160 (2015).[3] *Brady*, No. 52120-2-II at 2.[4] Under former RCW 10.73.160(4) (2015), a "[d]efendant who has been sentenced to pay costs and who is not in contumacious default in the payment may *at any time* petition the court" for remission. *Brady*, No. 52120-2-II at 2. The trial court, relying on amended RCW 10.73.160(4), denied Brady's motion.[5] *Brady*, No. 52120-2-II at 1, 4. In 2020, this court held that "[b]ecause the precipitating event—Brady filing his motion—occurred before . . . the effective date of the amendment, the trial court erred by applying the statute retroactively to deny Brady's motion to remit LFOs." *Brady*, No. 52120-2-II at 3. This court remanded "to the trial court to conduct a hearing under former RCW 10.73.160." *Brady*, No. 52120-2-II at 4.

In 2021, Brady filed a motion to clarify his 2006 judgment and sentence. Specifically, Brady asked the trial court to clarify whether his community custody was ordered under RCW 9.94A.715(1)(a) or RCW 9.94A.715(1)(b). Brady argued that under RCW 9.94A.715(1)(a), his community custody would begin after he completes his term of confinement, and under RCW 9.94A.715(1)(b), his community custody would begin when he "is transferred to community custody in lieu of earned release." Clerk's Papers (CP) at 9. Brady argued that his 2006

---

[3] Brady filed two motions to remit. The first motion was filed May 08, 2018, and was based on 10.01.160. The second motion was filed May 29, 2018 and was based on 10.73.160. *Brady*, No. 52120-2-II at 2. This court's prior opinion considered Brady's May 29th motion. *Brady*, No. 52120-2-II at 2. However, the May 29th motion is not in the record on appeal. The record contains only the May 8th motion and this court's opinion addressing the May 29th motion.

[4] https://www.courts.wa.gov/opinions/pdf/D2%2052120-2-II%20Unpublished%20Opinion.pdf

[5] Amended RCW 10.73.160(4) provides that a defendant may petition the court for remission after being released from total confinement.

3

judgment and sentence was not sufficiently specific in this regard, and that if he was sentenced under RCW 9.94A.715(1)(a), his sentence would be unconstitutional because it would exceed the statutory maximum sentence in violation of *Blakely v. Washington*.[6]

On remand from this court's 2020 opinion, the trial court conducted a hearing to determine whether a manifest hardship existed in consideration of Brady's motion to remit his LFOs. The trial court also heard Brady's motion to clarify his judgment. VRP at 39.

In considering Brady's motion to remit, the trial court remarked that it was "inclined to find that [Brady is] unable to pay." Verbatim Transcript of Proceedings (VRP) at 18. The court recognized "the amount of time that [Brady] still has to serve" and stated, "[T]hat that in and of itself can be a basis for [the court] to waive any discretionary fines and fees." VRP at 18. Accordingly, the court orally ruled that

> [A]ny costs that are remaining would be waived. The crime victim penalty by statute is mandatory, so that would remain. Any restitution on the costs and fees that were previously imposed would be waived; and if there's any interest calculated on the restitution, if the restitution hasn't been paid then that restitution interest would not be waived.

VRP at 18. The court further clarified its ruling stating

> The court costs are waived. Any remaining court costs are waived.
> . . . .
> Any remaining fees—which I don't see any other fees—are waived. Any interests related to those court costs and fees is waived. The mandatory—the appellate fees are not waived, [the court] think[s] that those are mandatory. The crime victim penalty assessment remainder is not waivable, I believe that's mandatory. As far as restitution is concerned, if there's still restitution owing, any interest on that restitution cannot be waived until there's confirmation that the restitution has been paid.

---

[6] *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

VRP at 20. Regarding appellate costs, the trial court stated, "[T]he appellate court had already made a determination about what those costs are going to be, and those I don't believe are waivable so those would remain in place." VRP at 19. The trial court also declined to reallocate payments believing that it did not have authority to do so.

In addition to remitting Brady's discretionary LFOs, the trial court heard Brady's motion to strike community custody conditions from his judgment and sentence.[7] The trial court ruled

> As it relates to Lines 9 and 10 [of Appendix 4 in Brady's judgment and sentence], Mr. Brady is successful; and if the State could please prepare an order reflecting that Lines 9 and 10 of Appendix F are stricken [because the conditions imposed are] not causally linked to the crimes for which Mr. Brady was found guilty.
> And then as it relates to Line 11, given the fact that I've waived the discretionary—the non-mandatory fines and fees, I believe that because [Brady is] indigent and pursuant to both the *Dillon* and *Lundstrom* cases cited by Mr. Brady, that those fees [pertaining to the Department of Corrections supervision fees] should be waived also.

VRP at 35-36.

Regarding the motion to remit, the trial court entered an order modifying Brady's judgment and sentence to delete the $110 criminal filing fee and all interest accrued on non-restitution LFOs.

In arguing his motion to clarify, Brady expressed that he "just needed to know [under] what provision of RCW 9.94A.715(1)(a) or (1)(b) [the trial court] intended [Brady] to do [his]

---

[7] Brady's motion to strike the community custody conditions from his judgment and sentence is not in the record on appeal and the court's decision to strike these conditions is not on appeal. Despite this court's remand instructions limiting the trial court's consideration to ruling on Brady's motion to remit, the State did not object to the trial court modifying Brady's judgment and sentence as to his community custody conditions. However, it is unclear under what authority the trial court modified Brady's judgment and sentence fourteen years after it was entered.

36 to 48 months . . . of community custody." VRP at 39. Brady explained that while the court had sentenced him to 318 months, the DOC had set his maximum release date for May 26, 2031, imposing, what Brady believed was "three additional years of punishment that the court is not authorized to" impose. VRP at 39. Brady asked the trial court to include a notation on his judgment and sentence indicating that if he were to remain imprisoned then he "would have no community custody after that because that would be the statutory maximum." VRP at 40.

In response, the State argued, among other things, that Brady's understanding of "statutory maximum" was legally incorrect, and that the statutory maximum for Brady's offenses is life in prison. VRP at 40. Consequently, the trial court could impose the community custody after his period of incarceration, regardless of how it was calculated.

The trial court adopted the State's arguments and entered an order denying Brady's motion.

Brady appeals the order modifying his sentence and the order denying his motion for clarification.

ANALYSIS

Brady argues the trial court erred by failing to modify his judgment and sentence regarding payment of supervision fees and collection costs, by not remitting his appellate costs, by not recognizing its authority to reallocate payments made on discretionary LFOs to his mandatory LFOs, and by denying his motion to clarify the court's community custody order.

I. TRIAL COURT'S AUTHORITY TO MODIFY 2006 JUDGMENT AND SENTENCE

As an initial matter, we hold that the trial court erred in modifying Brady's 2006 judgment and sentence in response to his motion to remit. The trial court erred when it entered

an order "modifying" the judgment and sentence to delete the $110 criminal filing fee and non-restitution interest. CP at 58.

Brady was sentenced under the Sentencing Reform Act of 1981 (SRA). "The SRA permits modification of sentences only in specific, carefully delineated circumstances." *State v. Shove*, 113 Wn.2d 83, 86, 776 P.2d 132 (1989). Brady's motions to remit were filed under former RCW 10.01.160, and RCW 10.73.160.[8] Neither of those statutes allowed a trial court to violate the principles of finality and modify Brady's judgment and sentence. They provided only that the sentencing court could "remit all or part of the amount due in costs, modify the method of payment under RCW 10.01.170, or convert the unpaid costs to community restitution hours." Moreover, RCW 36.18.020, the statute the trial court was apparently relying on to modify Brady's judgment and sentence, only applies prospectively to cases pending direct appeal. *State v. Ramirez*, 191 Wn.2d 732, 738, 426 P.3d 714 (2018). Brady's case was not pending direct appeal.

Thus, the trial court erred when it amended Brady's judgment and sentence in response to his motion to remit. However, the trial court did have the authority to enter an order *remitting* Brady's costs. RCW 10.01.160(4), RCW 10.73.160(4).

II. DISCRETIONARY APPELLATE COSTS

Brady argues that appellate costs are discretionary and that the trial court should have remitted them with the other discretionary costs. The State agrees "that the trial court erred in

---

[8] Former RCW 10.01.160(4) and former RCW 10.73.160 explained the procedure under which a defendant could seek remission of his LFOs and appellate costs.

concluding it lacked the authority to remit appellate costs." Br. of Resp't at 12. We agree that the trial court erred when it determined it did not have authority to remit appellate costs.

We review a trial court's determination whether to remit LFOs for an abuse of discretion. *See State v. Baldwin,* 63 Wn. App. 303, 312, 818 P.2d 1116 (1991). "A trial court abuses its discretion when it fails to exercise its discretion." *State v. Stearman*, 187 Wn. App. 257, 265, 348 P.3d 394 (2015). Although a trial court can remit discretionary costs, it lacks either statutory or inherent authority to remit mandatory LFOs. *State v. Conway*, 8 Wn. App. 2d 538, 548, 438 P.3d 1235 (2019).

Under former RCW 10.73.160(1) (1995), "[t]he court of appeals, supreme court, and superior courts may require" a convicted adult to pay appellate costs. *See also* RCW 10.01.160 (stating "[t]he court may require a defendant to pay costs"). A defendant who is "sentenced to pay costs and who is not in contumacious default in the payment . . . may at any time petition the [sentencing court] . . . for remission of the payment of costs or of any unpaid portion." Former RCW 10.73.160(4) (1995). A motion to remit appellate costs is properly filed in the trial court that sentenced the defendant. Former RCW 10.73.160(4) (1995).

Here, the parties agree that appellate costs are discretionary, thus a court is not prohibited from remitting those costs. And former RCW 10.73.160 grants the trial court authority to remit appellate costs. Nonetheless, the trial court stated that "the appellate court had already made a determination about what [the mandatory] costs are going to be, and" that the trial court did not believe those costs were waivable. RP at 19. The trial court erred by failing to recognize and exercise its discretion to remit the appellate costs.

### III. SUPERVISION FEES AND COLLECTION COSTS

Brady argues that his judgment and sentence should be amended to reflect the trial court's oral ruling remitting all discretionary costs, including supervision fees and collection costs. Specifically, Brady argues that although the trial court struck the Department of Corrections (DOC) supervision fees from his judgment and sentence, the trial court inadvertently left one clause imposing supervision fees on line 11 in Appendix F of his judgment and sentence. Additionally, Brady argues that collection costs contained in section 4.4 of his judgment and sentence should be struck because they are discretionary. Brady asks this court to either strike these costs "or remand for the trial court to strike [them]." Br. of Appellant at 13. The State's brief does not address Brady's arguments concerning supervision fees and collection costs. We hold that Brady's argument fails.

As discussed above, the trial court was without authority to modify Brady's judgment and sentence in response to his motion to remit. As such, it had no authority to strike any clauses from his judgment and sentence. Moreover, the record shows that no supervision fees or collection costs have been imposed. Because these fees have not been imposed, there are simply no fees for the trial court to "remit." Thus, the trial court did not err by not modifying Brady's judgment and sentence to eliminate these potential costs.

### IV. REALLOCATION OF PAID LEGAL FINANCIAL OBLIGATIONS

Brady argues that the trial court erred by not recognizing its authority to reallocate the payments Brady made on his discretionary LFOs to his mandatory LFOs. We disagree.

Trial courts possess authority to modify LFOs, however, the exercise of that authority is neither unbounded nor exclusive. RCW 9.94A.6333(3)(f) imparts the trial courts with authority

to "modify the terms of payment of [] legal financial obligations, reduce or waive nonrestitution legal financial obligations, or convert nonrestitution legal financial obligations to community restitution hours."

Although the statute does not confine the trial court's authority to unpaid LFOs, the cases Brady relies on address the trial court's authority regarding only unpaid LFOs. Specifically, this court recognized that "[a] superior court retains 'control over *unpaid* obligations owed to the court.'" *State v. Gaines*, 16 Wn. App. 2d 52, 59-60, 479 P.3d 735 (2021) (emphasis added) (quoting RCW 36.18.190). Where a defendant fails to "pay some of his fees," this court held that "in the absence of statutory language indicating otherwise, a sentencing court has jurisdiction to enforce the requirements of a sentence imposed until those requirements are met." *State v. Johnson*, 54 Wn. App. 489, 490-91, 774 P.2d 526 (1989).

The trial court retains authority over unpaid LFOs, however the county clerk has authority concerning the receipt and disbursement of funds. Under the Washington State Constitution, the legislature "provide[s] for the election [of] . . . county clerks, . . . prescribe[s] their duties, and fix[es] their terms of office." Wash. Const. art. XI, sec. 5. The majority of Washington superior court clerks are elected. *Burrowes v. Killian*, 195 Wn.2d 350, 358, 459 P.3d 1082 (2020). Once elected, superior court clerks "serve roles within the judiciary and within county government." *Ten Bridges, LLC v. Guandai*, 15 Wn. App. 2d 223, 234-35, 474 P.3d 1060, review denied, 487 P.3d 515 (Wash. 2021), and *review denied sub nom. Ten Bridges v. Asano*, 487 P.3d 517 (Wash. 2021).

The role of superior court clerk is one of duality and as such clerks are placed in a unique position. *Burrowes*, 195 Wn.2d at 358. As elected officials, "clerks fulfill 'a constitutional

position that exists outside the judicial branch.'" *Ten Bridges*, 15 Wn. App. 2d at 235 (quoting *Burrowes*, 195 Wn.2d at 361). Removed from the judicial branch, "the clerk is neither the court nor a judicial officer." *Ten Bridges*, 15 Wn. App. 2d at 235 (quoting *Swanson v. Olympia Peninsula Motor Coach Co.*, 190 Wn. 35, 38, 66 P.2d 842 (1937)). Instead, the "office of superior court clerk is 'essentially ministerial in its nature.'" *Ten Bridges*, 15 Wn. App. 2d at 235 (quoting *Olympic Peninsula*, 190 Wn. at 38).

Pierce County appoints the superior court clerk. PIERCE COUNTY CHARTER § 3.60. Even where not elected, the superior court clerk retains some autonomy from the judicial branch. In setting out the composition and powers of the executive branch, the Pierce County charter "created the executive department of Clerk of the Superior Court." PIERCE COUNTY CHARTER § 3.60. The charter further provides that "[t]he Clerk shall be appointed by the Executive and confirmed by a majority of the Council." PIERCE COUNTY CHARTER § 3.60. In establishing the superior court clerk as being part of the executive branch, the county charter further distinguishes the clerk from the judiciary.

Court clerks have a statutory duty to "exercise the powers and perform the duties conferred and imposed upon" them. RCW 2.32.070. Accordingly, within the context of LFOs, statute provides county clerks the authority to collect and disburse funds paid towards LFOs. RCW 9.94A.760(2). Statute further provides the order of priority in which a county clerk disburses collected funds. RCW 9.94A.760(2), RCW 10.01.170.

Here, in relying on caselaw concerning unpaid LFOs, Brady seeks to extend the trial court's authority over unpaid LFOs to his paid LFOs. Brady stated he has been making payments on his LFOs believing that his "victims were getting all th[e] money." RP at 15.

However, Brady's payments were first applied to the discretionary costs. While not explicitly addressed in the record, it appears that the superior court clerk here performed the executive function of collecting Brady's funds and then disbursing them according to statute. We will not interfere with the court clerk's authority to receive and disburse Brady's funds.

Thus, we hold that the trial court did not abuse its discretion in declining to reallocate Brady's paid LFOs.

## V. MOTION TO CLARIFY

Brady argues that the trial court erred by denying his motion to clarify. Specifically, he argues that "the community custody statute [he] was sentenced under has two separate provisions, one that exceeds the maximum allowable sentence, and one that does not." Br. of Appellant at 24. Brady argues that in the past, Washington courts interpreted "*statutory maximum* to mean 'the absolute maximum sentence provided by the legislature for a certain offense, not the maximum sentence allowed by the jury's findings,'" but that this misinterpretation was corrected by the Supreme Court's *Blakely* decision, clarifying that the "'statutory maximum' meant the maximum sentence a trial judge was authorized to give without finding additional facts." Br. of Appellant at 18-19 (quoting *State v. Hughes*, 154 Wn.2d 118, 131, 110 P.3d 192 (2005), *abrogated by Washington v. Recuenco*, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006)). We hold that the trial court did not err in denying Brady's motion to clarify.

Brady argues that if he were sentenced to community custody under former RCW 9.94A.715(1)(a), his sentence would be unconstitutional because he would serve his community custody term after having served "the maximum allowable sentence based on the facts contained

in the verdict." Br. of Appellant at 23-24. He claims that if he was sentenced under former RCW 9.94A.715(1)(b), his term of confinement and community custody would not exceed the maximum allowable sentence. Brady argues that the trial court should place a notation on his judgment and sentence to avoid an unconstitutional sentence.

In response, the State argues that Brady's motion to clarify is a collateral attack on the judgment and sentence which should have been brought under CrR 7.8 and transferred to this court as a PRP. The State asks this court to convert Brady's motion for clarification into a PRP in the interests of judicial economy, and dismiss as time-barred and successive.[9]

We address the merits of Brady's motion to clarify and do not reach the State's argument concerning converting this appeal to a PRP.

A.      *Considering the Motion to Clarify on the Merits*

Although a superior court has no inherent, and only limited statutory, authority to modify a final judgment and sentence, it is clearly within the superior court's authority to clarify a prior judgment and sentence. *State v. Harkness*, 145 Wn. App. 678, 684-85, 186 P.3d 1182 (2008); *State v. Young*, 4 Wn. App. 135, 136, 480 P.2d 514 (1971). Such clarification serves a "just and principled application of [the] law . . . by driving away any clouds of unknowing around its meaning." *State v. Brady*, No. 49183-4-II at 7-8 (Wash. Ct. App. Mar. 27, 2018) (unpublished).[10]

---

[9] The State requests that this court take judicial notice of extensive materials it attached to its brief. The appended material chronicles Brady's numerous PRPs filed over the span of several years. We decline to take judicial notice of the materials because they are not part of the record on appeal and are not necessary to resolve this matter.

[10] https://www.courts.wa.gov/opinions/pdf/D2%2049183-4-II%20Unpublished%20Opinion.pdf

Here, Brady's motion is properly characterized as a motion to clarify. Brady is asking the court to clarify whether his community custody sentence was ordered under former RCW 9.94A.715(1)(a) or (b). The plain import of Brady's motion is to drive away any doubt concerning the basis of his community custody sentence. In arguing that the DOC has imposed three additional years on his sentence, Brady seeks not so much to change his sentence, as to remedy what he argues is DOC's mistaken application of his sentence. Thus, we consider the merits of Brady's motion to clarify.

B.          *Maximum Allowable Sentence and Community Custody Following Blakely*

Brady argues that he "is subject to a term of confinement that exceeds the maximum allowable sentence as defined by *Blakely v. Washington*." Br. of Appellant at 3. Specifically, Brady argues that his "total confinement exceeds the maximum allowable sentence the court can impose." Br. of Appellant at 17.

In *Blakely v. Washington*, the U.S. Supreme Court clarified that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." [11] 542 U.S. 296, 303, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). Consequently, the relevant statutory maximum is "the maximum [a judge] may impose *without* any additional findings." *Blakely*, 542 U.S. at 303-04.

This court in *Knotek*, explained that *Blakely* "does not nullify life imprisonment as the statutory maximum" but rather "outline[s] the procedure by which a life term . . . may be imposed." *State v. Knotek*, 136 Wn. App. 412, 425, 149 P.3d 676 (2006) (discussing *Blakely* as

---

[11] *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

applied to Knotek's class A felony offense). This court clarified that "[a] life sentence is possible for a class A felony only if the trier of fact specifically finds beyond reasonable doubt, or the defendant admits to, aggravating facts supporting an exceptional life sentence." *Knotek*, 136 Wn. App. at 425. Neither *Blakely* nor *Knotek* require a finding of additional facts in order to impose community custody.

Here, Brady fails to show that *Blakely* redefined the statutory maximum and standard sentence such that a jury would be required to find additional facts before imposing community custody. Brady's reading of *Knotek* incorrectly concludes that a court would not be allowed "to increase the standard range without the court finding additional facts, *whether punishment is in [the] form of time in prison or community custody*." Br. of Appellant at 23 (emphasis added).

Brady's argument is based on the proposition that community custody is analogous to imprisonment. Even if this were true, his reliance on *Blakely* is misplaced. What *Blakely* requires is that a fact finder decide any fact that increases the penalty for a crime beyond the prescribed statutory maximum. *Blakely,* 542 U.S. at 301. Brady's sentence is based solely on the facts found by the trial court following a bench trial. Community custody followed automatically on the verdict. Former chapter 9.94A RCW required community custody following a sex offense. Thus, there is no finding required under *Blakely*, and a trial court can impose a term of community custody that exceeds the maximum standard range, so long as it does not exceed the statutory maximum. Because *Blakely* is inapplicable to Brady's community custody term, the trial court did not err in denying Brady's motion to clarify.

Accordingly, Brady's motion is properly characterized as a motion to clarify, and the trial court did not err when it denied Brady's motion to clarify.

15

No. 55675-8-II

CONCLUSION

We hold that the trial court did not have authority to modify Brady's judgment and sentence in response to a motion to remit, that the trial court erred in determining that it did not have authority to remit appellate costs, and that the trial court did not err in denying Brady's request to reallocate the funds he paid prior to making his motion.

We further hold that the trial court did not err when it denied Brady's motion to clarify whether his community custody sentence was imposed under RCW 9.94A.715(1)(a) or (b). Accordingly, we affirm in part, reverse in part, and remand for further proceedings consistent with this court's opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, P.J.

We concur:

Veljacic, J.

Price, J.

16